**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Mary Elizabeth De La ROSA,**
**Defendant–Appellant.**

**No. 89–2689.**

United States Court of Appeals,
Fifth Circuit.

Aug. 29, 1990.

Thomas S. Berg, Asst. Federal Public Defender, Roland E. Dahlin, II, Federal Public Defender, Houston, Tex., for defendant-appellant.

Joseph Douglas Wilson, Washington, D.C., Paula C. Offenhauser, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before WISDOM, DAVIS, and BARKSDALE, Circuit Judges.

WISDOM, Circuit Judge:

A jury convicted Mary Elizabeth De La Rosa of kidnapping a two year old boy in the Republic of Mexico and transporting him in foreign commerce from Mexico to Texas, in violation of the Federal Kidnapping Act, 18 U.S.C. § 1201. She now appeals her conviction and sentence. We affirm.

STATEMENT OF FACTS

The facts are bizarre. In 1985 De La Rosa lived in Houston, Texas with Domingo Galarza; they were not married. Perhaps to save their deteriorating relationship, De La Rosa desperately wanted a child. She was unable to bear children, however; she had undergone a double tubal ligation in 1983. In the summer of 1985, De La Rosa falsely told Galarza that she was pregnant with his child. She entered the hospital in the fall of that year for gall bladder surgery, but she told Galarza that she was going to give birth. In a series of lies, she told Galarza that she had indeed given birth, to twins, but they had to be taken to Galveston for medical attention.

To document her story, De La Rosa fraudulently obtained false birth certificates for twin boys in February 1986. She

obtained certified copies of these documents several months later.

In October 1987 De La Rosa drove to Diaz Ordaz, Mexico to the home of Concepcion Negrete. She told Negrete that she was going to Rio Verde, Mexico to fetch children who were being raised for her there. De La Rosa left her car at Negrete's house and proceeded to Rio Verde.

On October 26, 1987, a man known as "Rubel" or "Nacho" abducted Juan Antonio Castillo Gonzalez near the market in Rio Verde. Gonzalez, a two year old boy, was playing with his siblings as his mother worked in the nearby market. Nacho brought the boy to the home of Vincenta Guerrero Payta in Rio Verde, where De La Rosa was waiting. He gave the child to De La Rosa. Nacho appeared nervous and expressed concern about the police. De La Rosa allayed his fears by telling him that she and the child would be leaving later that same day. Later that day, during an argument with Payta, the defendant waved a pistol and warned that anyone reporting to the authorities information about the boy would have to deal with her.

De La Rosa, Nacho, and two other persons travelled with the boy to Diaz Ordaz to the home of Negrete, where the defendant had left her car.[1] After promising Nacho an indefinite sum of money and a job in the United States, she crossed the border to the United States with the boy and went to Houston, Texas. There, she introduced her friend, Galarza, to his "son", whom she called Domingo, named after her friend.[2]

The Federal Bureau of Investigation (FBI) interviewed De La Rosa in December 1987. She told them that she gave birth to twins two years earlier and that the children had been kept in Mexico; she said that she was able to bring only one home. When the FBI arrested De La Rosa in February 1989, she changed her story. She admitted then that the child was not her own, but she denied that she had kidnapped him. Nevertheless, she remarked

to the arresting agents that "the mother [of Gonzalez] in Rio Verde should not have left her child unattended in the marketplace".

A jury convicted De La Rosa of violating 18 U.S.C. § 1201(a)(1). The trial judge sentenced her to 180 months imprisonment, three years supervised release, and a $50 special assessment.

## DISCUSSION

De La Rosa raises six separate challenges to her kidnapping conviction and sentence. We consider each in turn.

### A. Sufficiency of the Indictment

■ De La Rosa was charged with violating 18 U.S.C. § 1201. That statute provides:

(a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when—

(1) the person is *willfully* transported in interstate or foreign commerce

\* \* \* \* \* \*

shall be punished for any term of years or for life. [Emphasis added].

In the indictment, the government charged that De La Rosa

did unlawfully seize ... and carry away and hold for ransom, reward, and otherwise, Juan Antonio Castillo Gonzalez, a minor, who was transported in foreign commerce by defendant.... (violation: Title 18, United States Code, § 1201(a)(1)).

De La Rosa contends that the omission of the word "willfully" to modify "transported" renders the indictment legally insufficient, because *willful* transportation in interstate or foreign commerce is an essential element of the offense. We reject this challenge.

Generally, "[t]o be sufficient, an indictment needs only to allege each essential element of the offense charged so as to enable the accused to prepare his defense

---

**1.** Before the trip, De La Rosa gave the boy a sedative.

**2.** She told Galarza that the other child had died.

and ... to invoke the double jeopardy clause in any subsequent proceeding".[3] In this case, the existence of two factors causes us to read the indictment more liberally. First, the defendant was aware of the omission during trial and neglected to raise the issue. Second, counsel for the defendant conceded at oral argument that De La Rosa sustained no prejudice in preparing her defense as a result of the omission of the word "willfully".[4] We hold an indictment to be sufficient "unless it is so defective that it does not, by a reasonable construction, charge an offense for which the defendant is convicted".[5]

Under this liberal reading, the indictment passes muster. We follow *United States v. Wilson*[6] and the cases cited therein that have rejected challenges to indictments that omit the *mens rea* requirement. These cases base that result on the theory that the indictments "fairly import" the mental state. *Wilson* also notes that reference to the statute allegedly violated reinforces other references in the indictment.[7] The indictment in this case contained a citation to 18 U.S.C. § 1201(a)(1). Finally, the jury instructions left no doubt that *willful* transportation in foreign commerce is an essential element of the offense. Because "the law does not compel a ritual of words",[8] we reject this challenge to the indictment. The omission was not a material fault.

**B.  Application of 18 U.S.C. § 1201(a)(1) to an abduction in Mexico**

■■■■ De La Rosa was charged with and convicted of kidnapping the two year old Gonzalez in Mexico and transporting him in foreign commerce to the United States. De La Rosa contends that 18 U.S.C. § 1201(a)(1) applies only to a kidnapping that 1) occurs within the jurisdiction of the United States and 2) subsequently involves interstate or foreign transportation. She relies on *United States v. McRary*,[9] in which the court stated that the foreign commerce jurisdictional basis in 18 U.S.C. § 1201 applies only when the kidnapping takes place in the United States and the victim is transported to a foreign state.

18 U.S.C. § 1201(a)(1) makes kidnapping a federal offense when "the person is willfully transported in interstate or foreign commerce ...". We hold that this language is sufficiently broad to cover the abduction of a person in Mexico and his subsequent transportation to the United States. As an initial matter, we note that *McRary* is not controlling. That case involved the seizure of a person on a vessel on the high seas, outside of the territorial jurisdiction of the United States, and subsequent transportation of the person to Cuba. The kidnapping thus had no connection with the United States, unlike the instant case.

By transporting Juan Antonio Castillo Gonzalez from Mexico to the United States, the defendant transported him in "foreign commerce" as used in section 1201(a)(1). The plain meaning of the words "foreign commerce" does not support the narrow construction that De La Rosa urges, i.e., that the words denote only transportation *from* the United States, not *to* the United States. The original federal kidnapping statute defined the term "foreign commerce" to "include transportation from ... a foreign country to any State, Territory, or the District of Columbia".[10] The definition later was changed to read "commerce

---

**3.**  *United States v. Webb,* 747 F.2d 278, 284 (5th Cir.1984), *cert. denied,* 469 U.S. 1226, 105 S.Ct. 1222, 84 L.Ed.2d 362 (1985).

**4.**  *See United States v. Campos–Asencio,* 822 F.2d 506, 508 (5th Cir.1987).

**5.**  *United States v. Wilson,* 884 F.2d 174, 179 (5th Cir.1989) (quoting *United States v. Trollinger,* 415 F.2d 527, 528 (5th Cir.1969) (per curiam)).

**6.**  884 F.2d 174, 179.

**7.**  *Id.  See also United States v. Boyd,* 885 F.2d 246, 249 (5th Cir.1989) ("The clarity of an indictment can properly be increased by its reference to the statute which allegedly has been violated.").

**8.**  *United States v. Webb,* 747 F.2d 278, 285.

**9.**  665 F.2d 674, 678 (5th Cir. Unit B), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2306, 73 L.Ed.2d 1307 (1982).

**10.**  18 U.S.C. § 408b (1940).

with a foreign country".[11] The Reviser's Note explains that the purpose of the change was to substitute the broad word "commerce" for the narrower word "transportation".[12] "Foreign commerce" means to or from the United States. 18 U.S.C. § 1201(a)(1) covers the defendant's conduct.

### C. Sufficiency of the Evidence

■ To establish a violation of 18 U.S.C. § 1201(a)(1), the government must prove beyond a reasonable doubt that the defendant 1) knowingly and willfully kidnapped the victim; 2) held him for ransom, reward, or other benefit; and 3) transported him in interstate or foreign commerce.[13]

■ De La Rosa contends there is no evidence that she personally abducted Gonzalez or that another committed the act for her. When faced with a challenge to the sufficiency of the evidence on a criminal conviction, this Court views the evidence and all inferences that reasonably may be drawn from it in the light most favorable to the government.[14] We are bound to accept all credibility choices in favor of the jury's verdict, and we will reverse a conviction only if no reasonable jury could conclude that guilt was proven beyond a reasonable doubt.[15] In this case, the evidence adduced at trial suffices to support the conviction.

■ De La Rosa lied to Galarza when she told him that she was pregnant with his child. After that initial falsehood, she made preparations to obtain a child born to someone else. The government showed that she obtained false birth certificates one and a half years before the kidnapping. In October 1987 she traveled to Mexico to retrieve children she said were being raised for her. In Mexico, she was waiting at the home to which "Nacho" brought the two year old boy. She took the child and, in response to Nacho's apprehension about the police, said that she would be leaving with the boy that same day. She later had an argument with her Mexican host; there was eyewitness testimony that De La Rosa waved a pistol and warned that no one should go to the police. Before crossing the border to the United States, she promised Nacho an indefinite sum of money and a job in the United States. When she was arrested in February 1989, De La Rosa made a statement showing that she knew the circumstances of the child's original abduction: "[T]he mother in Rio Verde should not have left the child unattended in the marketplace". From this evidence, the jury was entitled to infer that De La Rosa was an active participant in the kidnapping. There is no merit to her challenge to the sufficiency of the evidence.

### D. *Batson* challenge

■ De La Rosa is Hispanic. She raised a *Batson*[16] challenge to the government's use of a peremptory challenge to strike the only Hispanic member of the twenty-eight person jury venire. *Batson v. Kentucky* held that a prosecutor violates the equal protection clause when he strikes veniremen of the defendant's race based on the assumption that they would be lenient toward the defendant because of race. In response to the defendant's challenge, the district judge requested the government to provide an explanation for the strike. The government explained that the juror was struck because of her employment with a church-affiliated agency.[17] The prosecutors believed that she would be inclined to side with the defendant because someone

---

**11.** 18 U.S.C. § 10 (1952).

**12.** *Id.,* Reviser's Note.

**13.** *United States v. McBryar,* 553 F.2d 433 (5th Cir.), *cert. denied,* 434 U.S. 862, 98 S.Ct. 191, 54 L.Ed.2d 136 (1977).

**14.** *United States v. Church,* 888 F.2d 20, 23 (5th Cir.1989). *See also United States v. Crosby,* 713 F.2d 1066, 1071 (5th Cir.), *cert. denied,* 464 U.S. 1001, 104 S.Ct. 506, 78 L.Ed.2d 696 (1983).

**15.** *United States v. Beason,* 690 F.2d 439, 442 (5th Cir.1982), *cert. denied,* 459 U.S. 1177, 103 S.Ct. 828, 74 L.Ed.2d 1023 (1983).

**16.** *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

**17.** The juror's questionnaire stated that she was a "site coordinator" for Houston Metropolitan Ministries.

"who works in a church ministry ... basically wants to forgive people". The prosecution also asserted that it had evidence that De La Rosa at one time relied on a church for financial assistance. The district judge accepted this explanation as a neutral reason. We review that determination with deference, for it involves an evaluation of credibility.[18]

■■■■ We have stated that "[v]alid reasons for exclusion [of jurors] may include 'intuitive assumptions' upon confronting a venireman ... eye contact, demeanor, age, marital status, and length of residence in the community ...".[19] It is not essential that the prosecution's basis for a peremptory challenge be quantifiable.[20] For example, in *United States v. Moreno*,[21] the prosecutor struck a Hispanic male based on the "gut reaction" that a commercial artist would tend to be lenient toward a person charged with a narcotics offense. We upheld the district court's conclusion that this was a neutral reason and not a pretext for discrimination. The instant case is analogous; we uphold the court's ruling.

### E. Government's closing argument

De La Rosa contends that improper prosecutorial argument in summation warrants a new trial. She maintains that she was unfairly prejudiced by four instances of improper argument: 1) characterizations of the crime, 2) prefatory remarks challenging defense counsel's argument, 3) appeals for sympathy for the kidnapping victim and his mother, and 4) a request for an immediate verdict.

■■ We note intially that on this issue De La Rosa's burden is substantial. "A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone."[22] The essential issue raised in this type of challenge is whether the allegedly improper remarks cast serious doubt on the jury's verdict.[23] We answer that question with reference to the following three factors: "1) the magnitude of the prejudicial effect of the statements; 2) the efficacy of any cautionary instruction; and 3) the strength of the evidence of the defendant's guilt".[24]

■■ First, De La Rosa complains of the prosecutor's characterizations of the crime as "diabolical" and "a crime against humanity". The trial court sustained her objection to the latter remark; there was no objection to the former. We conclude that there is not significant prejudice from this remark. Moreover, as we noted previously, the evidence of the defendant's guilt is substantial. We find no reversible error.[25]

■■ Second, she contends that the prosecutor challenged the integrity of defense counsel, a practice strictly prohibited.[26] The remarks to which the defendant refers are statements by the prosecutor that prefaced his discussion of defense counsel's argument. For example: "I don't know what [defense counsel] thinks this trial is about ..."; "Mr. Berg [defense counsel] miscorrectly [sic] stated the evidence again"; and "I don't know what ... trial Mr. Berg was watching but it wasn't this one." We find no impropriety in the prose-

**18.** *United States v. Moreno*, 878 F.2d 817, 821 (5th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 508, 107 L.Ed.2d 510 (1989).

**19.** *United States v. Terrazas–Carrasco*, 861 F.2d 93, 95 (5th Cir.1988).

**20.** *United States v. Lance*, 853 F.2d 1177, 1181 (5th Cir.1988). *See also United States v. Forbes*, 816 F.2d 1006, 1010–11 (5th Cir.1987).

**21.** 878 F.2d 817, 820–21 (5th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 508, 107 L.Ed.2d 510 (1989).

**22.** *United States v. Iredia*, 866 F.2d 114, 117 (5th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 3250, 106 L.Ed.2d 596 (1989) (quoting *United States v.*

*Lowenberg*, 853 F.2d 295, 302 (5th Cir.1988), *cert. denied,* 489 U.S. 1032, 109 S.Ct. 1170, 103 L.Ed.2d 228 (1989)).

**23.** *Id.*

**24.** *Id.*

**25.** *See also United States v. Bradshaw*, 690 F.2d 704, 714 n. 15 (9th Cir.1982) (Wisdom, J.) (reference in kidnapping case to defendant's "abominable sexual practices" in closing argument did not constitute reversible error).

**26.** *See United States v. Murrah*, 888 F.2d 24 (5th Cir.1989).

cutor's remarks. His statements were not personal attacks at all; they pointed out only that the government had a conflicting view of the evidence. *United States v. Livingston*[27] supports this conclusion. The defendant in that case complained that, during closing argument, the prosecution stated eight times that the defense attorney tried to "disguise" the truth. The Court found that, at worst, this fell on the borderline of proper jury argument, since it actually addressed the inferences drawn by the defense.[28] In this case, there wasn't the slightest suggestion that defense counsel made an effort to disguise the truth or to deceive the jury. The prosecutor's statements were not improper.

Third, De La Rosa objects to the prosecutor's discussion of the emotional harm that resulted to the kidnapping victim and his mother because of the abduction. Specifically, he addressed the lost opportunities for mother-child bonding. The remarks came in response to defense argument that the boy had suffered no physical harm. The defense objected to this line of argument, and the court responded by instructing the jury "not to consider sympathy or bias or prejudice".

The challenged statements do not constitute reversible error. First, the argument probably had a minimal impact on the jury, because the information it imparted was obvious. The jury knew that Gonzalez was kept away from his mother for over fifteen months. Moreover, the boy's mother testified at trial, so the jury doubtless had already considered the interruption of their relationship. As a striking example of that, she testified that her son could no longer speak or understand Spanish when he was finally reunited with his family. Second, the trial judge issued a curative instruction when the defense objected to this apparent appeal for sympathy. This Court presumes that a jury heeds a trial court's instructions.[29]

The defendant's final objection concerns the prosecutor's appeal to the jury for an immediate guilty verdict:

> There is no rule that requires that you spend a long time back there. You spend as much time as you need.... Sometimes an immediate verdict is one that serves the purpose, one that lets everybody out here know there was never any question in your mind about her guilt based upon the strength of the evidence in the case....

The jury deliberated for only twenty-five minutes before returning a verdict of guilty.

De La Rosa did not object to the request for an immediate verdict. That omission substantially affects this Court's review of the alleged error. Absent an objection, we employ a plain error analysis. We will reverse a conviction only if the remarks in question "seriously affected the fairness, integrity, or public reputation of [the] judicial proceeding and resulted in a miscarriage of justice".[30]

The prosecutor's appeal does not constitute reversible error. In addition to his plea for an immediate verdict, the prosecutor also told the jury to spend as much time as it needed to reach a verdict. Moreover, we repeat that the strength of the evidence of De La Rosa's guilt was substantial. Although the request for an immediate verdict cannot satisfy the plain error standard, we frown on this type of argument. The jury should not be told that the length of its deliberations "sends a message". Jurors should feel comfortable to consider evidence for as long as they see fit. Requests for an immediate verdict may imply that the jurors' task is simple and not to be taken seriously. We discourage use of this tactic.

F. Use of a gun during the offense

The district court increased De La Rosa's sentencing offense level by two points

---

**27.** 816 F.2d 184 (5th Cir.1987). *See also United States v. Shackleford,* 709 F.2d 911, 913 (5th Cir.), *cert. denied,* 464 U.S. 899, 104 S.Ct. 253, 78 L.Ed.2d 239 (1983).

**28.** *Livingston,* 816 F.2d at 195.

**29.** *United States v. Parker,* 877 F.2d 327, 333 (5th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 199, 107 L.Ed.2d 153 (1989).

**30.** *United States v. Goff,* 847 F.2d 149, 162 (5th Cir.), *cert. denied sub nom., Kuntze v. United States,* 488 U.S. 932, 109 S.Ct. 324, 102 L.Ed.2d 341 (1988).

based on its finding that she used a dangerous weapon in the commission of the crime. There was testimony at trial that in Rio Verde, Mexico, at the home to which the victim was brought, De La Rosa waved a gun during an argument and warned that anyone going to the police would have to deal with her.

The Sentencing Guidelines provide for a two-level increase in the offense level for kidnapping if the defendant uses a gun or other dangerous weapon to commit the offense.[31] A gun is used if it is discharged or "otherwise used".[32] "Otherwise used" denotes conduct less than the discharge of a firearm but "more than brandishing, displaying, or possessing a firearm".[33] A firearm is brandished if it is "pointed or waved about, or displayed in a threatening manner".[34]

▊▊▊ The district court's ruling on this question is subject to the "clearly erroneous" standard of review.[35] De La Rosa argues that at most her actions constituted brandishing the weapon. Although she indeed did brandish the handgun during an argument, we find that the addition of a threat to those involved in the scheme with her operates to bring this conduct within the orbit of "otherwise used". Her brandishing of the handgun and the threat apparently were sufficient to intimidate the others involved in the plot and enabled her to cross the U.S. border without police pursuit. We uphold the trial judge's determination that De La Rosa "otherwise used" a dangerous weapon in the kidnapping.

The judgment is AFFIRMED.

---

31. U.S.S.G. § 2A4.1(b)(3).

32. U.S.S.G. § 2A4.1(b)(3) Appl. Note 2.

33. U.S.S.G. § 1B1.1 Appl. Note 1(g).

34. U.S.S.G. § 1B1.1 Appl. Note 1(c).

35. *See, e.g., United States v. Mejia–Orosco,* 867 F.2d 216, 220–21 (5th Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989)

(status as an organizer, leader, manager, or supervisor); *United States v. Franco–Torres,* 869 F.2d 797, 800 (5th Cir.1989) (whether defendant has obstructed the administration of justice). *But see United States v. Roberts,* 898 F.2d 1465, 1469 (10th Cir.1990) (*de novo* review of question whether defendant used or merely brandished a knife).