931 F.2d 57
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
David Randel NEWMAN and Stephen Shane Newman, Defendants-Appellants.
 Nos. 90-5349, 90-5378.
 United States Court of Appeals, Sixth Circuit.
 April 23, 1991.
 
 Before NATHANIEL R. JONES and DAVID A. NELSON, Circuit Judges, and MILES, District Judge.*
 PER CURIAM.
 
 
 1
 This is an appeal from sentences imposed under the United States Sentencing Guidelines after the defendants pleaded guilty to kidnapping and stolen vehicle charges. The kidnap victim, a widow 74 years of age, was repeatedly raped, and the district court found that the woman had sustained "serious bodily injury" within the meaning of that term as used in U.S.S.G. Sec. 2A4.1(b)(2)(B). The main issue presented on appeal is whether this finding, which resulted in a two-point increase in the offense level prescribed by the guidelines, was clearly erroneous. Concluding that the finding was not clearly erroneous, we shall affirm the sentences.
 
 
 2
 * On October 28, 1989, defendants David Randel Newman and Stephen Shane Newman escaped from a Tennessee correctional facility. (Because the defendants--who are not related--have the same surname, it will be convenient for us to distinguish between them by using their first names.) The men went to the residence of an elderly woman (Mrs. H, as we shall call her) and offered to rake her lawn. Mrs. H declined the offer, but let the men into her house when they asked to use her telephone. Once inside, David forced the woman to the floor and, with help from Stephen, tied her hands with a pair of panty hose. Stephen took a knife from the kitchen, and after relieving Mrs. H of her wallet, credit cards, and car keys, the men drove off with her in her car.
 
 
 3
 While Stephen drove, David raped Mrs. H on two separate occasions in the back seat of the automobile. At least one of the rapes occurred at knifepoint.
 
 
 4
 At approximately 4:30 a.m. on October 29, 1989, Stephen pulled into a service station in Braselton, Georgia, where Stephen accompanied Mrs. H into the station. David remained asleep in the car. Mrs. H was permitted to enter the women's restroom alone, and Stephen went into the men's room. As soon as she heard Stephen close the door, Mrs. H left the women's room and reported her abduction to a police officer who happened to be nearby. David and Stephen were promptly arrested.
 
 
 5
 Mrs. H was taken to the emergency room of a hospital. Members of the hospital staff took her medical history, recorded her pulse, blood pressure, and temperature, performed a vaginal examination, and collected the type of forensic evidence normally taken in cases of rape. The hospital chart indicates that no sign of injury or trauma was found, that a thick fluid was discovered in the patient's vagina, and that she was discharged in good condition. Mrs. H subsequently underwent psychological counseling at a sexual assault crisis center.
 
 
 6
 The defendants were indicted for kidnapping Mrs. H and transporting her in interstate commerce, a violation of 18 U.S.C. Secs. 2 and 1201, and for transporting a stolen vehicle in interstate commerce, a violation of 18 U.S.C. Secs. 2 and 2312. Both men pleaded guilty to both charges pursuant to a plea agreement.
 
 
 7
 The probation officer who prepared the necessary presentence reports recommended that each defendant be given an adjusted offense level of 32. This level was arrived at by starting with a base offense level of 24, as directed by U.S.S.G. Sec. 2A4.1, and making the following additions and subtractions:
 
 
 8
 + 2 points pursuant to Sec. 2A4.1(b)(2)(B) because Mrs. H sustained serious bodily injury;
 
 
 9
 + 2 points pursuant to Sec. 2A4.1(b)(3) because a dangerous weapon was used in the commission of the crimes;
 
 
 10
 + 4 points pursuant to Sec. 2A4.1(b)(5) because the kidnapping was to facilitate commission of the offense of escape;
 
 
 11
 + 2 points pursuant to Sec. 3A1.1 because the victim was elderly;
 
 
 12
 - 2 points pursuant to Sec. 3E1.1 for acceptance of responsibility.
 
 
 13
 Given the defendants' criminal history category (V in both cases), an offense level of 32 pointed, under the sentencing table of the guidelines, to prison sentences in the range of 188-235 months. (An offense level of 30, by way of comparison, would have produced a guideline range of 151-188 months.) Both defendants filed objections to the presentence reports.
 
 
 14
 Sentencing hearings were held before District Judge James H. Jarvis, who accepted the probation officer's recommendations on how the guideline range should be calculated. The judge sentenced David to imprisonment for 235 months, to be followed by a three-year period of supervised release. Stephen was sentenced to imprisonment for 200 months, with a five-year period of supervised release. Both men were ordered to pay restitution to Mrs. H.
 
 II
 
 15
 The defendants argue first that the district court erred in its finding that Mrs. H sustained serious bodily injury. They contend next that the victim was released within 24 hours of her abduction, and that the court should therefore have reduced the offense levels by one point pursuant to U.S.S.G. Sec. 2A4.1(b)(4)(C). Finally, Stephen argues that it was error to increase his offense level for use of a dangerous weapon. We shall discuss each of these contentions in turn.
 
 
 16
 * Application Note 1 to U.S.S.G. Sec. 2A4.1(b)(2)(B) refers the reader to the definition of "serious bodily injury" found in the commentary to Sec. 1B1.1. That commentary provides, among other things, as follows:
 
 
 17
 " 'Serious bodily injury' means injury involving extreme physical pain or the impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation. As used in the guidelines, the definition of this term is somewhat different than that used in various statutes." Application Note 1(j).
 
 
 18
 Elsewhere in the commentary to Sec. 1B1.1 the following definition of "bodily injury" is provided:
 
 
 19
 " 'Bodily injury' means any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought. As used in the guidelines, the definition of this term is somewhat different than that used in various statutes." Application Note 1(b).
 
 
 20
 David argues that because the definition of "serious bodily injury" refers to medical "intervention," while the definition of "bodily injury" refers to medical "attention," the Sentencing Commission must have intended a distinction between intervention and attention and must have intended a harsher penalty for those who inflict injuries requiring more than a perfunctory medical or forensic examination. Both men suggest that Mrs. H sustained no actual physical injury. If Mrs. H cannot even be said to have suffered a "bodily injury" within the meaning of that term as used in the guidelines, the argument runs, it follows a fortiori that she could not have sustained a "serious bodily injury."
 
 
 21
 Mindful of our statutory obligation to accept the district court's factual findings unless clearly erroneous and to give due deference to the district court's application of the guidelines to the facts, see 18 U.S.C. Sec. 3742, we conclude that it was within the province of the district court to determine, as it did, that Mrs. H sustained serious bodily injury. Absent very unusual circumstances, it appears self-evident to us that a rapist's sexual penetration of the body of a 74-year-old woman represents an "injury" that is "significant" and "painful" and "obvious" within the meaning of these words as used in Application Note 1(b) of U.S.S.G. Sec. 1B1.1. Such an injury is also the type of injury for which medical attention ordinarily would be sought, so there are two separate grounds on which the district court was entitled to find that a "bodily injury" occurred.
 
 
 22
 Whether or not the injury involved "extreme" physical pain, we believe that the injury could also fairly be said to have required medical "intervention" within the meaning of Application Note 1(j). The doctors had to probe inside the victim's body, and this is more than mere "attention;" it constitutes "intervention" of the most literal sort, and qualifies the injury as "serious" under the guideline definition. The injury would likewise have to be classified as serious, moreover, if it involved the impairment of a mental faculty, and we think such impairment could well have occurred here.
 
 
 23
 The extreme trauma that Mrs. H suffered led her not only to obtain psychological counseling but also to make monetary expenditures that seem almost irrational, given her economic circumstances. The presentence reports disclose that Mrs. H is a widow living on Social Security benefits. She nonetheless spent $3,000 to buy a replacement for her car after finding that she could not bear to keep the vehicle in which she had been raped. In addition, she was constrained to install a security system valued at $1,200. The severe emotional strain to which these expenditures attest is entirely consistent with the observations of mental health professionals who have noted that rape victims often experience shock, sleeplessness, nightmares, fear, humiliation, and paranoia. See, e.g., Rosenberg, Rape Crisis Syndrome, 20 Medical Aspects of Human Sexuality 65-71 (1986). These negative emotional effects can sometimes be long lasting. Nadelson, Consequences of Rape: Clinical and Treatment Aspects, 51 Psychotherapy and Psychosomatics 187-92 (1989). The guidelines may not have been drafted with precisely this sort of fact-pattern in mind--and the case at bar illustrates how difficult it is for anyone to foresee all of the myriads of factual scenarios to which the guidelines will be applied, and how important it is for sentencing judges to retain a measure of discretion in dealing with real-life situations--but we are not prepared to say that the district court committed clear error in finding that this elderly widow suffered a "serious" bodily injury.
 
 
 24
 We are strengthened in our conclusion by the circumstance that a finding of "serious bodily injury" results in no more points being added to the base offense level than does a finding that the victim happened to be elderly. Twice as many points are added where an escape happens to be involved. Looking at the matrix in which the two points for serious bodily injury have been placed, we think it unlikely that the Sentencing Commission intended this particular enhancement to be withheld in all but the most extreme cases of serious bodily injury. Although it is not directly relevant, finally, we note that the particularly heinous nature of the defendants' conduct--conduct for which, in the not too distant past, they might well have received the death penalty--would almost certainly have warranted an upward departure from the guideline range if the district court had fixed the offense level at 30 rather than 32.
 
 B
 
 25
 Guideline Sec. 2A4.1(b)(4)(C) provides for a one-point decrease in the offense level "[i]f the victim was released before twenty-four hours had elapsed." Application Note 3 provides that "[f]or the purpose of subsection (b)(4)(C), 'released' includes allowing the victim to escape or turning him over to law enforcement authorities without resistance." Both defendants argue that the district court ought to have reduced their offense levels by one point pursuant to Sec. 2A4.1(b)(4)(C) because they "allowed" Mrs. H to escape. David maintains that he did nothing to prevent the escape, and Stephen argues that his letting Mrs. H use the restroom shows that he was willing that she escape.
 
 
 26
 In United States v. White, 903 F.2d 457, 465 (7th Cir.1990), the Court of Appeals for the Seventh Circuit concluded that a defendant must actually acquiesce in the escape if he is to earn a one-point decrease under Sec. 2A4.1(b)(4)(C). We agree--and we do not believe that the district court was required to find acquiescence here. David slept through the escape, and was thus totally oblivious to it. As to Stephen, there was no showing that he had the wit to realize what would happen if he and Mrs. H went into separate restrooms. (There is ample evidence suggesting that neither defendant was particularly intelligent.) Mrs. H had previously tried without success to let it be known that she was being held against her will, and what ultimately led to her successful escape was her own persistence, not the defendants' acquiescence.
 
 C
 
 27
 U.S.S.G. Sec. 2A4.1(b)(3) directs a two-level increase "[i]f a dangerous weapon was used." Application Note 2 says that this means "that a firearm was discharged, or a 'firearm' or 'dangerous weapon' was 'otherwise used' (as defined in the Commentary to Sec. 1B1.1 (Application Instructions))." The commentary to Sec. 1B1.1 contains the following language at Application Note 1 (after immaterial amendments that became effective November 1, 1989):
 
 
 28
 "(c) 'Brandished' with reference to a dangerous weapon (including a firearm) means that the weapon was pointed or waved about, or displayed in a threatening manner.
 
 
 29
 (d) 'Dangerous weapon' means an instrument capable of inflicting death or serious bodily injury. Where an object that appeared to be a dangerous weapon was brandished, displayed, or possessed, treat the object as a dangerous weapon.
 
 
 30
 .............................................................
 
 
 31
 ...................
 
 
 32
 * * *
 
 
 33
 (g) 'Otherwise used' with reference to a dangerous weapon (including a firearm) means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon."
 
 
 34
 At Stephen's sentencing hearing his counsel argued that the knife involved in this case was merely "brandished" or "displayed," and thus was not "otherwise used." The district court disagreed, and so do we. If David had forced Mrs. H to disrobe and submit to rape by holding a gun on her, it is clear that the gun, although not discharged, would have been "otherwise used." That David was in fact using a knife instead of a gun when he did these things makes no difference at all--the weapon was still dangerous, and its use in this way was clearly sufficient to support the two-level increase. See United States v. De La Rosa, 911 F.2d 985 (5th Cir.1990) (display of gun sufficient for sentence enhancement under U.S.S.G. Sec. 2A4.1(b)(3) if accompanied by verbal threat); United States v. Roberts, 898 F.2d 1465 (10th Cir.1990) (sentence enhancement permissible under robbery guideline where defendant held knife on victim while demanding money).
 
 
 35
 AFFIRMED.
 
 
 
 *
 The Honorable Wendell Miles, United States District Judge for the Western District of Michigan, sitting by designation