**UNITED STATES of America**

v.

**Polla Denice THOMAS.**

**No. 6:95cr52.**

United States District Court,
E.D. Texas,
Tyler Division.

Oct. 22, 1996.

Ike F. Hawkins, Shreveport, LA, for Polla Denice Thomas.

Richard Lee Moore, Asst. U.S. Atty., Tyler, TX, for U.S.

## ORDER

JUSTICE, District Judge.

### I. *Introduction*

On November 15, 1995, a jury convicted Polla Denice Thomas, the defendant in this criminal action, of all offenses charged in a three-count indictment. Specifically, Thomas was convicted of possession with intent to distribute cocaine, cocaine base ("crack"), and marijuana, all in violation of 21 U.S.C. § 841(a)(1). Thomas now moves for judgment of acquittal and for a new trial.

The convictions against the defendant stem from the seizure of illegal drugs found inside a car she was driving en route from Houston, Texas, to Shreveport, Louisiana. During a routine traffic stop, Thomas gave consent to two law enforcement officers to search the car. Inside a black bag in the trunk of the car, the officers found three bags, which contained, respectively, marijuana, cocaine, and cocaine base ("crack"). Also located in the black bag was a book and tablet inscribed with the defendant's name.

### II. *Motion for Judgment of Acquittal*

██ The defendant seeks a judgment of acquittal on her drug convictions, asserting that the evidence failed to establish that she had knowledge of drugs being in her car or that she intended to possess such drugs.

Rule 29(c) of the Federal Rules of Criminal Procedure, in relevant part, provides:

> The court on motion of a defendant ... shall order the entry of judgment of acquittal of one or more offenses charged in the indictment ... if the evidence is insufficient to sustain a conviction of such offense or offenses.

The standard for reviewing a motion for judgment of acquittal based upon allegedly insufficient evidence is, whether a reasonable juror could conclude that the evidence established the defendant's guilt beyond a reasonable doubt. *United States v. Pennington,* 20 F.3d 593, 597 (5th Cir.1994); *United States v. Varkonyi,* 611 F.2d 84, 85 (5th Cir.), *cert. denied,* 446 U.S. 945, 100 S.Ct. 2173, 64 L.Ed.2d 801 (1980). In considering a motion for judgment of acquittal, the trial court is not permitted to substitute its view of the evidence for that of the jury; thus, it is not the role of the trial court to weigh the evidence or assess the credibility of the witnesses. *Id.; United States v. Jaras,* 86 F.3d 383, 386–87 (5th Cir.1996). Rather, the trial must consider all of the evidence, all reasonable inferences therefrom, and all credibility determinations in the light most favorable to the prosecution. *Id.* at 386–87; *see United States v. Patterson,* 644 F.2d 890, 893 (1st Cir.1981).

In a 21 U.S.C. § 841(a)(1) case, the government most prove: (1) the defendant knowingly or intentionally possessed (2) a controlled substance, (3) with the intent to distribute it. *Jaras,* 86 F.3d at 386. A jury may infer the elements of § 841(a)(1) from circumstantial evidence alone. *United States v. Molinar–Apodaca,* 889 F.2d 1417, 1423 (5th Cir.1989). In proving possession, it is not necessary to show that the defendant had actual possession of the drugs. It is sufficient to establish constructive possession— specifically, that the defendant had ownership, dominion, or control over the drugs or over a vehicle where the drugs were found. *United States v. Polk,* 56 F.3d 613, 620 (5th Cir.1995); *see also United States v. Resio–Trejo,* 45 F.3d 907, 911 (5th Cir.1995) (holding that knowledge of the presence of drugs "often may be inferred from the exercise of control over the vehicle in which the illegal drugs [were] concealed").

At trial, the defendant did not dispute that drugs were found in her bag and that these drugs were of a sufficient quantity to find intent to distribute. Instead, she disputed and continues to dispute the finding that she knowingly or intentionally possessed the drugs. The government's case against the defendant with respect to knowing possession of drugs included the following facts:

1. On September 25, 1995, at about 2:30 a.m., the defendant was stopped by Panola County deputies Joe Mims and Chris Rivers on U.S. Hwy. 59 for speeding. Two other persons, McDaniel Smith and Tina Marie Stills, were in the rental vehicle with the defendant. The defendant told the deputies she was traveling from Houston and that her destination was Shreveport, Louisiana.

2. A rental receipt found in the car showed that it was rented by Carl White.

3. Deputy Mims testified that Smith was asked how long the passengers had been in Houston, and he said, "just for a couple of days." The defendant, on the other hand, in response to the same question, said about a week. Subsequently, Deputy Mims asked for and received consent from the defendant to search the vehicle.

4. During the search, Deputies Mims and Rivers, in addition to Officer Keith Edgmon, who had since arrived at the scene, observed a black bag in the trunk. The defendant told the deputies that the bag was hers and that they should be careful in searching it because it contained her "dirty undergarments." No dirty undergarments were found in the bag.

5. Inside the bag, in fact, were a plastic bag containing about a half pound of marijuana, a plastic bag containing nine smaller bags of crack cocaine, and a paper sack containing a clear plastic bag filled with approximately one pound of cocaine. The defendant did not express surprise when she saw that drugs had been found in her bag.

6. The black bag contained a book and tablet inscribed with the defendant's name.

7. A receipt, which was found among the defendant's personal property, showed that on August 26, 1995, she wired $2,000 to Stills in Houston.

In rebuttal, the defendant offered the evidence of her husband, her mother, a friend, and herself. None of these witnesses disputed that drugs were found in the defendant's bag or that these drugs were marijuana, cocaine, and crack. Rather, the defendant's case rested on the theory that she did not know the drugs were in her bag. Her case centered on the testimony of her husband, Melvin Thomas ("the husband").

The husband testified as follows:

His wife did not have knowledge of the drugs in her bag; but he, along with Stills, Smith, and a drug dealer named Carl White, were actually responsible for the drugs being in the car. The drugs were being transported to Shreveport to fulfill drug sales the husband had arranged. The husband did not know who had placed the drugs in Thomas' bag; however, Smith told him that he had placed the drugs in what he thought was Stills' bag. He had brought his wife with him to Houston because she was "scared" to stay in Shreveport alone. His wife had no knowledge of his involvement with drug dealing. The husband gave the defendant $2,000 to transfer by wire to Stills in Houston, thus accounting for the receipt dated August 26, 1995. He untruthfully told her that the $2,000 was for a ground effect kit for her car.

In light of the above evidence, it is found that the jury was fully entitled to conclude that the defendant was knowingly in possession of illegal controlled substances and had the intent to distribute them. Unquestionably, the jury was entitled to disbelieve the testimony of the husband. The jury was also entitled to infer, from the fact that drugs were found in the defendant's bag placed inside a car she was driving, that she knew the drugs were in her bag, and that she had knowing possession over them. *See, e.g., United States v. Hernandez–Palacios,* 838 F.2d 1346, 1349 (5th Cir.1988) ("One who owns or exercises control over a motor vehicle in which contraband is concealed may be deemed to possess the contraband."). Further, other circumstantial evidence supports the jury's finding: (1) the defendant's statement to the Panola County deputies that they might not want to look in the bag because of her dirty undergarments, when, in fact, there were no undergarments in the bag; and (2) the receipt found among the defendant's property for a wire transfer of $2,000 to Stills. After consideration of this evidence, a rational trier of fact could have found each essential element of the offense beyond a reasonable doubt. Consequently, the contention that the evidence was insufficient to convict the defendant of possession with intent to distribute is without merit.

### III. *Motion for New Trial*

A new trial should be granted "if required in the interest of justice." Fed.R.Crim.P. 33. A court exercises broad discretion in considering such a motion, *see United States v. Baytank (Houston), Inc.,* 934 F.2d 599, 617 (5th Cir.1991), and "[a]ny error of sufficient

magnitude to require reversal on appeal is an adequate ground for granting a new trial." *3 Charles Alan Wright, Federal Practice and Procedure* § 556 (2d ed.1982).

In her motion for new trial, the defendant lists the following bases for relief: (1) the prosecutor used peremptory strikes to systematically exclude black jurors; and (2) the prosecutor in his closing argument intentionally made misleading and false statements which resulted in the conviction of the defendant. Each of these challenges will be addressed in turn.

## A. Batson Challenge

At trial, the defendant, who is black, objected to two of the government's peremptory challenges, contending that such challenges were made solely on the basis of her race in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The government peremptorily challenged five prospective jurors; two of these jurors were black. These two jurors, Sonja Cox and Joyce Byrd, were the only prospective jurors who were black and in a position to sit on the jury after venire members had been successfully challenged for cause, and thus, the absence of these jurors resulted in an all-white jury. Following the defendant's objections to these challenges, the prosecution was ordered to furnish a race-neutral reason for challenging Cox and Byrd. The prosecutor stated that all five of his peremptory challenges were made on the basis that the venire members were single, and that, in his experience, single persons empathize more with the defense than do married persons. He stated that he challenged all persons on the venire who were single, except for one white female. He did not challenge the latter, because she was studying law enforcement in college, and he felt that she would thus be more empathetic to the prosecution. The court denied the defendant's objection. The defendant now argues that this denial was erroneous.

■ Three steps must occur before a *Batson* violation can be established. First, the party bringing the *Batson* challenge must make out a *prima facie* case that the peremptory challenges in question were exercised on the basis of race. In the case at hand, the defendant has met her *prima facie* case. The burden thus shifts to the government to articulate a race-neutral, non-discriminatory basis for the challenge. *Hernandez v. New York,* 500 U.S. 352, 360, 111 S.Ct. 1859, 1866–67, 114 L.Ed.2d 395 (1991). As already stated, the government's attorney stated that he exercised the peremptory challenges against the two black panelists because they were both single. The Fifth Circuit has held that such an explanation is race-neutral. *See, e.g., United States v. Terrazas–Carrasco,* 861 F.2d 93, 95 (5th Cir. 1988); *United States v. De La Rosa,* 911 F.2d 985, 991 (5th Cir.1990), *cert. denied,* 500 U.S. 959, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991). The burden thus shifts back to the plaintiff to show that the reason given is a pretext. *See Batson,* 476 U.S. at 93–94, 106 S.Ct. at 1721–22 (citing *Washington v. Davis,* 426 U.S. 229, 241, 96 S.Ct. 2040, 2048, 48 L.Ed.2d 597 (1976)); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ The determination of whether an explanation is pretextual is a finding of fact. "[T]he ultimate inquiry for the judge is not whether counsel's reason is suspect, or weak, or irrational, but whether counsel is telling the truth in his or her assertion that the challenge is not race-based." *United States v. Bentley–Smith,* 2 F.3d 1368, 1375 (5th Cir.1993). The demeanor of the attorney is often the "best evidence" in making this determination. Other relevant factors include the disproportionate impact of the counsel's criterion, *Hernandez v. New York,* 500 U.S. 352, 364, 111 S.Ct. 1859, 1868–69, 114 L.Ed.2d 395 (1991), the composition of the ultimate jury sworn in comparison to the jury pool, *United States v. Sangineto–Miranda,* 859 F.2d 1501, 1521–22 (6th Cir.1988), and whether there are minority members on the jury that counsel did not challenge, *id.* at 1522. The fact that a proffered reason would apply equally to another venire member who is not challenged is also strong evidence that the reason is a pretext. *See, e.g., Jones v. Ryan,* 987 F.2d 960, 973–74 (3d Cir.1993).

While the government's explanation for challenging Cox and Byrd is suspicious, the

defendant has failed to meet her burden of proving that the offered reason—that these members of the venire were challenged because they were single—was pretextual. The prosecutor did, in fact, challenge all prospective jurors who were single, except for one juror. The prosecutor's explanation for not challenging this person—that she was studying law enforcement in school—was, if sincerely made, a sufficient reason to make an exception and not challenge her. The defendant did not advance any evidence to show that the prosecutor was untruthful in this regard, such as showing that challenging all single members of the venire had a discriminatory impact on African Americans. Even though Cox and Byrd were the only black members of the venire who were eligible to sit on the jury after challenges for cause was sustained, this evidence, alone, is not sufficient proof that the prosecution's challenges to these two jurors were race-based.

■ At the same time, it must be emphasized that the signal of injustice that the selection of an all-white jury sends to a black defendant is not lost upon the court. "The very idea of a jury is a body ... composed of the peers or equals of the person whose rights it is selected or summoned to determine; that is, of his neighbors, fellows, associates, persons having the same legal status in society as that which he holds." *Strauder v. West Virginia,* 100 U.S. 303, 308, 25 L.Ed. 664 (1879). The Constitution provides the defendant with a right to have a jury selected free from discriminatory selection procedures. Nevertheless, a violation of this right is extremely difficult to determine. It is possible for a prosecutor to tender a "race-neutral" reason that can be used to challenge for cause all members of a minority group, and it is usually an arduous task for the defendant to prove that the justification employed by the prosecutor was used on a discriminatory basis. Whether members of a certain race are being systematically excluded may therefore be more appropriately determined by examining a prosecutor's pattern of jury selection. *See, e.g., United States v. Williams,* 934 F.2d 847, 850 (7th Cir.1991). Hereafter, the prosecutor's reasons for excluding minority venire members will be heavily scrutinized. Furthermore, if evidence is presented in future trials that excluding venire members on the basis of marital status has a disparate impact on minorities, it may be appropriate to find that the use of such characteristic is pretextual. *See Hernandez,* 500 U.S. at 363, 111 S.Ct. at 1868 ("If a prosecutor articulates a basis for a peremptory challenge that results in the disproportionate exclusion of members of a certain race, the trial judge may consider that fact as evidence that the prosecutor's stated reason constitutes a pretext for racial discrimination.").

## B. Prosecutorial Misconduct

The defendant argues that a new trial should be granted, because the prosecutor made improper remarks during closing argument. The defendant's attorney did not object to these remarks during trial, and therefore this court reviews the closing argument remarks under the plain error standard.[1]

To determine whether the prosecutor's comments during closing argument constitute a ground for a new trial, it must be found that (1) the remarks were improper and that (2) the remarks prejudicially affected the substantial rights of the defendant. *United States v. Fields,* 72 F.3d 1200, 1207 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 48, 136 L.Ed.2d 13 (1996); *United States v. Tomblin,* 46 F.3d 1369, 1386 (5th Cir.1995).

### 1. Improper Remarks

■ As discussed above, the defendant's defense centered on the testimony of her husband, Melvin Thomas. He testified at length about his involvement in the drug trade and stated that he was responsible for the drugs in the car, whereas his wife was innocent of any wrongdoing.

---

1. Under the plain error standard, the court is required to examine the remarks within the context of the entire trial and determine whether they "seriously affected the fairness or integrity of the proceedings and resulted in a miscarriage of justice." *United States v. Hatch,* 926 F.2d 387, 394 (5th Cir.), *cert. denied,* 500 U.S. 943, 111 S.Ct. 2239, 114 L.Ed.2d 481 (1991), *and cert. denied,* 502 U.S. 839, 112 S.Ct. 126, 116 L.Ed.2d 93 (1991).

Prior to his testimony, the court was presented with a letter that the husband had written to the prosecutor declaring his guilt and his wife's innocence. The letter was excluded from evidence as hearsay; but, based on this letter, the court appointed the husband counsel to advise him of his rights against self-incrimination. The attorney, out of the presence of the jury, told the husband that he would be incriminating himself if he testified as to the contents of the letter and advised him not to testify. Despite this warning, the husband insisted on testifying.

The husband testified as follows:

Tina Stills approached him at his wedding about selling some drugs. Stills told him that her friend, Carl White, could furnish him with drugs and that he only needed to arrange some sales. *Testimony of Melvin Keith Thomas,* p. 21–23. Stills asked the husband what he thought about the "deal." He replied, "I told her it was cool; I was—I was down with it." *Id.* at 24, lines 16–18. He then met White in Shreveport, where White told him that he was not to handle the drugs, but only to arrange sales. By setting up drug sales, White told the husband, the latter would make "some nice money." *Id.* at 25. The husband then told White that he would agree to arrange some sales. *Id.* at 26. The next time he saw White was about a week later. White appeared with eighteen ounces of powder cocaine, and the husband subsequently found White a buyer for the cocaine. *Id.* He later found three buyers for White in Shreveport, for thirty-six ounces of cocaine. *Id.* at 28.

In September 1995, he travelled to Houston, Texas, with his wife; she was fearful of staying in Shreveport, because the husband had recently been shot there. While he was in Houston, the husband arranged for some more drug sales, so that he could make money to repair his wife's car. He called a drug dealer in Shreveport, one Christopher Cole, and arranged a sale, whereby it was arranged that White and Stills would be in charge of getting the drugs and handling the money. Additionally, it was decided that Stills and McDaniel Smith would go to Shreveport to consummate the drug deal. *Id.* at 35–37. As well, the defendant determined that she would go back to Shreveport, in order to care for her children, who were being cared for by the husband's mother. McDaniel Smith placed the bags in the car; and someone put the drugs in the defendant's bag without her knowledge.

Throughout his testimony, the husband asserted that the defendant did not know about the drugs or his involvement in selling drugs. The husband also testified that he had been advised by his court-appointed attorney not to testify. He was also counseled that, if he testified, he could spend a long time in jail, and his wife, nevertheless, could still lose her case.

The defense counsel told the jury in closing argument that the jury should place great weight on the husband's testimony because of its inculpatory nature. The husband's testimony was highly credible, defense counsel argued, because by testifying he had "everything to lose."

> And I think, when you saw that man testify on the witness stand, you could see the good, because otherwise he wouldn't be up there on that witness stand. He subjected himself to criminal charges, to such an extent that an attorney had to be appointed to represent him, to sit with him, to advise him not to do what he had done. He had nothing to gain for himself by doing this. He had everything and has everything to lose.

*Closing Argument of Ike Hawkins, Counsel for the Defendant.*

Thus, central to the defense theory was that the husband—by testifying as to his involvement in arranging drugs sales, including the sales of the drugs which were found in defendant's bag—subjected himself to federal criminal charges; that he would not have taken such a high risk unless his wife was actually innocent; and thus, the jury should have found that the husband was being truthful when he said that his wife had no knowledge of the drugs found in her bag.

Following the defense counsel's closing argument, the prosecutor, in rebuttal, stated the following in his rebuttal argument:

And then he says he's up here facing charges. For what? He hadn't admitted to doing a darn thing in the Eastern District of Texas. He hadn't admitted to stepping foot in East Texas. He says he was there in Shreveport whenever the whole deal was happening, he was with someone else. Folks, I don't have one bit of authority outside, as he crossed that line over there. He hadn't admitted to any crime. And Houston? Everything in Houston, "It was somebody else's deal. I didn't know about it. It wasn't my dope. Heck, I didn't have anything to do with it." Don't buy that malarkey, that baloney that he subjected himself to some type kind of prosecution, because it's not true. Good Lord!

The prosecutor's claim to the jury that the husband did not testify as to any facts that would subject him to prosecution was highly disingenuous. Based on his testimony, the husband, at a minimum, could be prosecuted for conspiracy to possess controlled substances with the intent to distribute them, the use of a communication facility to facilitate the transfer of drugs, and aiding and abetting.

To prosecute the husband for a conspiracy pursuant to 21 U.S.C. § 846, the government would be required to show: (1) the existence of an agreement between two or more persons to violate the narcotics laws; (2) that each alleged conspirator knew of the conspiracy and intentionally joined in it; and (3) that each alleged conspirator voluntarily participated in the conspiracy. *United States v. Castillo,* 77 F.3d 1480, 1492 (5th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 180, 136 L.Ed.2d 120 (1996), *and cert. denied,* —— U.S. ——, 117 S.Ct. 236, 136 L.Ed.2d 166 (1996). "A defendant need only have had a minor role in the conspiracy, once it is shown that he voluntarily agreed to participate." *United States v. McKinney,* 53 F.3d 664, 672 (5th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 261, 133 L.Ed.2d 184 (1995). Once a conspiracy is proven, a defendant can be held criminally responsible for all foreseeable substantive offenses involved in the conspiracy. *United States v. Gonzalez,* 76 F.3d 1339, 1346 (5th Cir.1996). Moreover, a conspiracy can be proven with circumstantial evidence. *See, e.g., United States v. Cardenas,* 9 F.3d 1139, 1157 (5th Cir.1993) ("An agreement to violate narcotics laws may be inferred from 'concert of action.' "), *cert denied,* —— U.S. ——, 114 S.Ct. 2150, 128 L.Ed.2d 876 (1994); *United States v. Greenwood,* 974 F.2d 1449, 1457 (5th Cir.1992) (holding that a co-conspirator's testimony is admissible to establish the existence of a conspiracy).

The husband's testimony was clearly sufficient to subject him to liability for conspiracy. He testified that he entered into an agreement to sell drugs with Stills and White, and that he arranged several sales over the telephone. *See, e.g., id.* at 1463 (finding sufficient evidence to support conviction for conspiracy to possess drugs with intent to distribute, where evidence showed that a defendant had arranged a drug transaction in a telephone conversation). Furthermore, his testimony was sufficient to subject himself to liability for conspiracy within the Eastern District of Texas. A conspiracy to distribute drugs is a continuing offense, and as such, venue is proper in any district where the agreement was formed or where any overt act in furtherance of the conspiracy was performed. *United States v. Pomranz,* 43 F.3d 156, 158–59 (5th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 513, 133 L.Ed.2d 422 (1995); *see also United States v. Caldwell,* 16 F.3d 623, 624 (5th Cir.1994). The husband testified that he arranged buyers for the drugs that were transported from Houston to Shreveport, the same drugs that were found in the car the defendant was driving when she was stopped in Panola County, which is in the Eastern District of Texas. The transportation of the drugs through the Eastern District of Texas was an overt act in furtherance of the conspiracy to possess drugs with the intent to distribute them.

The husband also gave ample testimony to support a prosecution under 21 U.S.C. § 843(b), *i.e.,* the use of a communication facility to facilitate the distribution of drugs. Section 843(b) makes it unlawful for a person to knowingly or intentionally use a telephone in "committing or in causing or facilitating the commission" of the sale of drugs. The

husband admitted that he arranged at least one sale of drugs in Shreveport by means of a telephone in Houston.

In addition, the husband could be prosecuted for aiding and abetting in violation of 18 U.S.C. § 2. The government would need to prove that he "associated with a criminal venture, purposefully participated in the criminal activity, and sought by [his] actions to make the venture succeed." *United States v. Jaramillo*, 42 F.3d 920, 923 (5th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 2014, 131 L.Ed.2d 1013 (1995). An aiding and abetting conviction does not require that the defendant have actual or constructive possession of the drugs. *United States v. Evans*, 958 F.2d 1285, 1292 (5th Cir 1992). It merely requires that the defendant's "association and participation with the venture were in a way calculated to bring about that venture's success." *United States v. Salazar*, 958 F.2d 1285, 1292 (5th Cir.), *cert. denied,* 506 U.S. 863, 113 S.Ct. 185, 121 L.Ed.2d 129 (1992). The husband's testimony contained admissions sufficient to meet the three elements of an aiding and abetting prosecution; specifically, he associated himself with White and Stills, who he knew were involved in dealing drugs; he purposefully participated in the venture by finding and procuring buyers for drug sales; and by arranging such drug sales, he had a desire that the venture succeed, in order that he could make money.

The prosecutor's claim that the husband could not be prosecuted for federal criminal charges is thus wholly erroneous. Certainly, his argument that the husband could not be prosecuted for criminal charges in the Eastern District of Texas was patently untrue. Given the prosecutor's many years of experience prosecuting drug cases, it is difficult, if not impossible, to conceive that he believed that the husband did not subject himself to prosecution by his testimony. By this uncandid argument, that the husband's testimony did not subject him to criminal prosecution, the prosecutor struck a foul blow. *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629,

633, 79 L.Ed. 1314 (1935) (holding that "while [the prosecutor] may strike hard blows, he is not at liberty to strike foul ones"). Under these circumstances, it is found that the prosecutor's remarks were knowingly improper.

**2. Prejudicial Effect**

■ It is also found that the prosecutor's argument prejudicially affected the substantial rights of the defendant. In making this determination, both the magnitude of the prejudicial effect and the strength of the evidence of the defendant's guilt have been given consideration. *United States v. Fields,* 72 F.3d 1200, 1207 (5th Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 48, 136 L.Ed.2d 13 (1996).[2] A prosecutor occupies a special position of authority. As the United States Supreme Court has stated, "[t]he United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all." *Berger,* 295 U.S. at 88, 55 S.Ct. at 633. As a result, "[i]mproper suggestions, insinuations, and especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none." *Id.* It is the prosecutor's prerogative to decide whether or not a case will be prosecuted by the government. Given this authority, and also given the prosecutor's invocation of this authority before the jury in the case at hand, a probability exists that the jury placed great reliance on the prosecutor's contention that the husband could not be prosecuted on the basis of his testimony at trial.

It is also highly likely that this reliance influenced the jury's verdict. As discussed above, the husband's testimony was the crux of the defense's case. It was therefore absolutely essential to the defense that the jury find the husband to be a credible witness. The defendant's attorney repeatedly emphasized this point; that is, if the jury believed the husband's testimony, then the jury was bound to find the defendant not guilty. By relying on the prosecutor's statement that

**2.** A third factor in determining whether a new trial is warranted is whether the court gave cautionary instructions that effectively cured the prejudice caused by the prosecutor's misconduct.

Because the defendant did not make an objection at trial to the prosecutor's closing argument, no such instructions were given. *Fields,* 72 F.3d at 1207.

the husband did not subject himself to prosecution, the jury was undoubtedly more inclined to disbelieve his testimony, since—rather than risking prosecution for multiple counts of drug charges—he had nothing to lose and everything to gain by perjuring himself, because his wife would likely be found not guilty. Moreover, because the defense counsel had argued that the husband had subjected himself to prosecution by testifying, the prosecutor's closing argument invited the jury to find that the assertions of the defense counsel were not credible and, consequently, cast a serious doubt upon the reliability of the defense counsel's entire argument.

Furthermore, even though the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant knowingly possessed drugs with the intent to distribute them, the evidence in this case was not overwhelming. Other than the fact that drugs were found in her bag, that she told officers to be careful in searching her bag because of her dirty undergarments which turned out to not be in the bag, and that she wired $2,000 to Stills, there was no other substantial evidence presented to support the finding that the defendant had knowledge that drugs were in her bag, for the finding of knowing possession is based solely on inferences.

It cannot be found that, but for the prosecutor's statements, the jury would still have rendered a guilty verdict. The prosecutor's statements were highly improper, while the evidence of the defendant's guilt is not so strong that it can be characterized as overwhelming. Consequently, viewing the prosecutor's remarks in the context of the entire trial, the prosecutor's misconduct during closing argument casts serious doubt upon the correctness of the jury's verdict and, therefore, a miscarriage of justice occurred. A defendant seeking a new trial must carry a very heavy burden. This is the rare case in which such a burden has been successfully shouldered.[3]

## IV. Order

Accordingly, the defendant's motion for a new trial shall be, and is hereby, **GRANTED**. Further, the defendant's motion for judgment of acquittal shall be, and is hereby, **DENIED**. It is so **ORDERED**.

3. The finding of a miscarriage of justice is bolstered by the fact that the prosecutor also acted improperly when he elicited testimony during the trial in violation of the defendant's Due Process rights. In his direct examination of Harold Jones, a narcotics investigator with the City of Marshall, the prosecutor asked the following questions:

*Jones:* I advised all of the individuals—Ms. Thomas, McDaniel Smith, and Tina Marie Stills—of their rights, and asked them if they wanted to speak with us about the marijuana and cocaine that was in the car.
*Prosecutor:* You advised all three individuals that were in the vehicle of their rights?
*Jones:* Yes, I did.
*Prosecutor:* Did any of them want to talk to you?
*Jones:* No, they did not.
*Prosecutor:* Did they just not say anything—did they deny knowing about the controlled substances—or just not say anything at all?
*Jones:* They made no statement whatsoever in relation to the narcotics that were found.
*Prosecutor:* Just refused to talk to you altogether?

*Jones:* That's correct.

The Due Process Clause of the United States Constitution prohibits comments on a defendant's post–*Miranda* silence as a means of implying his guilt, even if used for impeachment purposes. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *Chapman v. United States*, 547 F.2d 1240, 1249 (5th Cir.), *cert. denied*, 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977); *United States v. Carter*, 953 F.2d 1449, 1462 (5th Cir.), *cert. denied*, 504 U.S. 990, 112 S.Ct. 2980, 119 L.Ed.2d 598 (1992). The test for determining whether a prosecutor's or witness's remarks on a defendant's post–*Miranda* silence constitute comments on a defendant's post-arrest silence is whether "the manifest intent was to comment on the defendant's silence, or if the character of the remark was such that the jury would naturally and necessarily so construe the remark." *Id.* at 1464. It is found that, when considered together, the witness' and prosecutor's remarks meet this test—the jury could readily have construed their remarks to be a comment on the defendant's silence. Consequently, it is likely that the jury improperly inferred guilt from the defendant's silence.