**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Paul Dana WILLIAMS, a/k/a Paul William Dana, Defendant–Appellant.**

No. 92–4671.

United States Court of Appeals, Fifth Circuit.

Aug. 5, 1993.

Garland Cardwell, Sherman, TX (court-appointed), for defendant-appellant.

Carol K. Johnson, Michael E. Savage, Asst. U.S. Attys., Sherman, TX, Bob Wortham, U.S. Atty., Beaumont, TX, for plaintiff-appellee.

Before GOLDBERG, HIGGINBOTHAM, and DAVIS, Circuit Judges.

GOLDBERG, Circuit Judge:

Appellant was convicted by a jury of kidnapping his estranged wife with the intent of committing "immoral" acts (sexually assaulting his wife while their child watched), being a felon in possession of a gun, and using a gun to commit a crime of violence in interstate commerce. He appeals, contending that the evidence was insufficient to support his convictions; that the district court erred in denying him the services of a court-appointed psychiatrist to determine his sanity at the time of the offense and his competence to stand trial; that the court erred in instructing the jury on the scope of the indictment; and that the government's failure to disclose certain materials denied him a fair trial. We affirm.

## FACTS AND PROCEEDINGS BELOW

After Lisa Dana (hereafter "Dana") filed for divorce from Paul Dana Williams, a/k/a Paul William Dana (hereafter "Williams"), the two separated and lived apart. Their two year-old son lived with Dana. On or about November 1, 1991, Williams came to Dana's home and convinced her to bring their son out with him to a local shopping mall, so that they could pick out a shiny new wagon for the boy. After they shopped unsuccessfully for a wagon, they returned to Williams' van.

Dana later testified that after they returned to the van, Williams began choking her and produced a gun, threatening to kill her with it. He took her to the back of the van and raped her. Afterward, he bound her with tape and wire, and took her and their son on a journey from Texas to Oklahoma and back again. Along the way, defendant repeatedly threatened, beat and sexually assaulted his wife in front of their young son, who became highly distressed by what he was forced to witness. Williams told Dana that he came prepared to kill her and that he had a shovel in the van with which he would bury her.

Finally, Dana persuaded Williams to hand her the gun and return her to her home. She immediately sought the advice of friends. These friends told her to go directly to a hospital for medical care and an examination to preserve evidence of the rape, and to go to the police to turn over the gun and tell her story. Dana followed this advice. The medical examination revealed that Dana had been violently sexually assaulted.

Williams was convicted by a jury of (1) kidnapping his wife with the goal of accomplishing an "immoral purpose," in violation of 18 U.S.C. § 1201(a)(1) (count one);[1] (2) possessing and transporting a firearm in interstate commerce despite being prohibited from doing so based on a prior conviction for a felony, in violation of 18 U.S.C. § 922(g) (count two);[2] and (3) carrying a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1) (count three).[3] Defendant was acquitted of a fourth count pertaining to transporting a person in interstate commerce with the intent to commit rape, in violation of 18 U.S.C. § 2421 and Oklahoma Criminal Code Title 21 § 1111(B). Defendant was sentenced to 420 months imprisonment.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

Count one of the indictment charged Williams with kidnapping Dana for an immoral purpose. Counts two and three of the indictment referred to a particular gun (listing its serial number). Williams argues that there was insufficient evidence supporting the "immoral purpose" element of the kidnapping charged in count one, and that there was insufficient evidence to show that the gun introduced at trial in support of counts two and three was the same gun used by him in kidnapping and assaulting his wife.

■■ To the extent that there is substantial evidence to support the verdict, the verdict must be sustained.[4] The appellate court's

---

1. 18 U.S.C. § 1201(a)(1) describes the federal offense of kidnapping as follows:
 (a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when:
 (1) the person is willfully transported in interstate or foreign commerce....
 shall be punished by imprisonment of any term of years or for life.

2. Defendant previously had been convicted of kidnapping, sexual assault, and manslaughter. 18 U.S.C. § 922(g) provides:
 (g) It shall be unlawful for any person—
 (1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year;
 ....
 to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.
 The gun used by defendant in the kidnapping incident was manufactured in California, pur-

chased by defendant in Texas, and utilized in the kidnapping in the states of Texas and Oklahoma.

3. 18 U.S.C. § 924(c)(1) provides that persons who carry firearms "during and in relation to any [federal] crime of violence" are subject to penalties additional to those imposed for the crime of violence itself.

4. *See Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942) ("The verdict of the jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it") (citations omitted); *United States v. Fortna,* 796 F.2d 724, 740 (5th Cir.) ("[W]e must examine all the evidence and reasonable inferences in the light most favorable to the government and determine whether a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt") (citations omitted), *cert. denied,* 479 U.S. 950, 107 S.Ct. 437, 93 L.Ed.2d 386 (1986); *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) ("It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except

role does not extend to weighing the evidence or the credibility of the witnesses.[5] If a rational jury could have found the defendant guilty beyond a reasonable doubt of the essential elements of the crimes charged, the conviction should be upheld.[6] We conclude that the government presented sufficient evidence to support its contention that Williams kidnapped Dana for an immoral purpose and used the gun with the particular serial number listed in the indictment.

 The government presented evidence establishing an unbroken chain of possession from the time Dana turned the gun in to the police. Not only did Dana testify that the gun presented in evidence was the same gun used to threaten her, but another witness testified that he believed he had sold that particular gun to Williams.[7] In any case, because Williams made no objection to the admission of the pistol into evidence, he has waived his right to object to its admission on appeal. *United States v. Leichtnam,* 948 F.2d 370, 375 (7th Cir.1991). Since evidence was presented that the gun was manufactured in California, was sold to Williams (a convicted felon) in Texas and used to commit a crime in interstate commerce, there was sufficient evidence supporting the conviction on counts two and three.

 Williams claims that because the jury acquitted him on count four (rape), there must have been insufficient evidence to convict him on count one (kidnapping for an immoral purpose), and that therefore the jury should have acquitted him on count one. His argument is *not so much premised on* insufficiency of the evidence on count one, for it clearly was sufficient,[8] but on the inconsistency of the two verdicts. Williams' argument fails for two reasons. First, the "immoral purpose" of the kidnapping in this case may or may not have been rape. The government presented evidence that Williams raped *and* assaulted his wife in the presence of their infant son, while Williams was transporting his wife and son in interstate commerce against their will. Thus, the jury may have found that the defendant actually intended other "immoral purposes" besides rape—e.g., assault. The government presented evidence of a variety of immoral purposes Williams sought, any one of which would have supported the conviction. Second, even if the two verdicts were inconsistent, a jury may return inconsistent verdicts in criminal cases, even where the inconsistency is the result of mistake or compromise. *See e.g., United States v. Fesler,* 781 F.2d 384, 390 (5th Cir.), *cert. denied,* 476 U.S. 1118, 106 S.Ct. 1977, 90 L.Ed.2d 661 (1986); *Harris v. Rivera,* 454 U.S. 339, 346, 102 S.Ct. 460, 464, 70 L.Ed.2d 530 (1981) (per curiam); *United States v. Powell,* 469 U.S. 57, 63, 67, 105 S.Ct. 471, 475, 478, 83 L.Ed.2d 461 (1984) (where truly inconsistent verdicts have been reached, "the most that can be said ... is that the verdict shows that either in the acquittal or in the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.... The fact that the inconsistency may be the result of lenity, coupled with the Government's inability to invoke review, suggests that incompatible verdicts should not be reviewable").

## II. DENIAL OF MENTAL EXAMINATION

A district court may order a mental examination of a defendant at public expense under several statutes. *See, e.g.,* Criminal Justice Act, 18 U.S.C. §§ 3006A; Insanity Defense

guilt.... A jury is free to choose among reasonable constructions of the evidence"), *aff'd,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

5. *See, e.g., United States v. Straach,* 987 F.2d 232, 237 (5th Cir.1993).

6. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

7. Because the seller had failed to keep a record of the serial number on the gun, the seller admitted that he could not "swear" that the gun presented as evidence against the defendant was the very same gun he had sold the defendant months earlier.

8. *See, e.g., United States v. McBryar,* 553 F.2d 433 (5th Cir.), *cert. denied,* 434 U.S. 862, 98 S.Ct.

Reform Act, 18 U.S.C. § 4241, 4242.[9] None of these statutory provisions requires that the defendant be granted a mental examination on demand.

In support of his motion for a mental examination on the twin issues of competence to stand trial and the defense of insanity, Williams stated that he "was under medical and psychiatric care as well as medication," and had been under such care at the time of the offense. The district court never ruled on Williams' request for a mental examination on insanity at the time of the offense, because Williams' attorney explicitly waived the defense at a hearing held on the motion for a mental examination. The district court denied Williams' request for a mental examination on competence to stand trial because it found that there was no reasonable cause to believe that Williams might be unable to understand the proceedings and assist in his own defense. Our review is limited to whether the district court abused its discretion.[10] Under that standard, we cannot say the district court erred in denying defendant's motion for a mental examination. For the sake of clarity, we will review the denial of defendant's request for a mental examination on sanity at the time of the offense separately from the denial of defendant's request for a mental examination on competence to stand trial.

## A. DENIAL OF MENTAL EXAMINATION ON SANITY AT THE TIME OF THE ALLEGED OFFENSE

Under the Insanity Defense Reform Act of 1984, 18 U.S.C. § 4242, the court is authorized to order a mental examination on the defendant's sanity at the time of the alleged offense, if the defendant has provided notice of his intention to rely on the insanity defense and the government has moved for such an examination. A psychiatrist appointed under § 4242 at the government's request or on the court's own motion is "expected to be neutral and detached," *United States v. Theriault,* 440 F.2d 713, 715 (5th Cir.1971), and reports his findings to the court even if the defendant does not wish him to do so. Under the Criminal Justice Act, 18 U.S.C. § 3006A, by contrast, the mental health expert "fills a different role." *Id.* The § 3006A expert's conclusions need not be reported either to the court or to the prosecution. *Id.* The court grants the defendant the assistance of an independent psychiatrist under § 3006A if the court determines, after an ex parte hearing, that such assistance would be "necessary for adequate representation." The mental health expert appointed under § 3006A may testify not only as to the defendant's sanity, but as to his competence, and other matters relevant to capacity to stand trial, culpability and punishment. The standards governing what is " "necessary to an adequate defense" are not susceptible of arbitrary articulation but can best be developed on a case by case basis." *See Theriault,* 440 F.2d at 715. The court is obligated to grant the defendant the assistance of an independent expert under § 3006A when necessary to respond to the government's case against him, where the government's case "rests heavily on a theory most competently addressed by expert testimony." *United States v. Patterson,* 724 F.2d 1128, 1130 (5th Cir.1984). However, the court is not necessarily obligated to grant the defen-

191, 54 L.Ed.2d 136 (1977); *United States v. Jackson,* 978 F.2d 903 (5th Cir.1992).

**9.** We note that defendant's brief in support of his motion for a mental examination cites to 18 U.S.C. §§ 4241, 4242. Defendant cites to § 3006A for the first time in his reply brief on appeal.

**10.** We review denials of mental examinations under 18 U.S.C. § 4241 for abuse of discretion. *See, e.g., United States v. McEachern,* 465 F.2d 833, 838 (5th Cir.), *cert. denied,* 409 U.S. 1043, 93 S.Ct. 539, 34 L.Ed.2d 494 (1972); *United States v. Partin,* 552 F.2d 621, 635–36 (5th Cir.),

*cert. denied,* 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977); *United States v. Morgan,* 559 F.2d 397, 398 (5th Cir.1977) (per curiam), *cert. denied,* 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 520 (1978).

The same standard of review applies to a denial of the services of an independent mental health professional under 18 U.S.C. § 3006A. *See, e.g., United States v. Goodwin,* 770 F.2d 631, 635 (7th Cir.1985), *cert. denied,* 474 U.S. 1084, 106 S.Ct. 858, 88 L.Ed.2d 897 (1986); *United States v. Alden,* 767 F.2d 314, 318–19 (7th Cir. 1984); *United States v. Hamlet,* 480 F.2d 556, 557 (5th Cir.), *cert. denied,* 414 U.S. 1026, 94 S.Ct. 452, 38 L.Ed.2d 317 (1973) (per curiam).

dant the assistance of an independent expert in preparing the defense of insanity.

■ The parties dispute whether the defendant gave timely notice of the defendant's intent to rely on the insanity defense at trial. We find that he did give timely notice.[11] However, at a hearing on the motion for a mental examination, held after the date on which notice of intent to rely on the insanity defense was due, defendant's counsel denied that defendant would rely on the insanity defense. For that reason, we find that the defendant has waived the issue of the denial of a mental examination on his sanity at the time of the alleged offense. *See, e.g., United States v. Garcia–Pillado,* 898 F.2d 36, 39 (5th Cir.1990) ("issues raised for the first time on appeal are not reviewable by this court unless they involve purely legal questions and failure to consider them would consider them would result in manifest injustice") (citation omitted).

■ Even if the issue of the denial of a mental examination on insanity at the time of the offense was not waived,[12] the defendant has not made the required threshold showing that his sanity was likely to be a significant

factor at trial,[13] such that the denial of a mental examination amounted to a denial of due process under *Ake v. Oklahoma,* or an abuse of discretion under 18 U.S.C. § 3006A.[14] Before we can say that the district court abused its discretion in denying a mental examination on sanity at the time of the offense, there must have been some factual showing that would be sufficient to give the trial court reasonable ground to doubt the defendant's sanity at the time of the offense. That factual showing is lacking in this case.

## B. DENIAL OF A MENTAL EXAMINATION ON DEFENDANT'S COMPETENCE TO STAND TRIAL

While prior to *Ake v. Oklahoma* we cautioned against conflating the legal standards for the grant of a mental examination on competence to stand trial with those applicable to the grant of a mental examination focusing on sanity at the time of the offense, *see United States v. McEachern,* 465 F.2d 833, 836 (5th Cir.1972); *United States v. Gray,* 421 F.2d 316, 318 (5th Cir.1970), the *threshold* showing required to comport with due process turns out to be similar.[15]

11. The court's Pretrial Order (dated November 27, 1991) provided that all pretrial motions were due by December 27, 1991. *See* R. vol. 1, 28; Defendant's Record Excerpts tab 5. Under Fed. R.Crim.P. 12.2(a), a defendant must give the government notice of his intent to rely on the insanity defense "within the time provided for the filing of pretrial motions or at such later time as the court may direct." Williams filed his motion for a mental examination on December 27, 1991. The district court erroneously concluded that the motion was due on December 17, 1991, when in fact it was due December 27, 1991. Defendant's counsel called the error to the attention of the court. *See* R. vol. 3, 40.

12. There is some evidence that defendant's counsel intended to retract the waiver of the insanity defense. R. vol. 3, 40.

13. *See infra,* pages 265–66 (facts revealed at hearing on mental examination).

14. *See Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) (habeas appeal from state court conviction); *Williams v. Collins,* 989 F.2d 841, 845 (5th Cir.1993) (habeas appeal from state court conviction) ("[N]either the bare assertion that the defendant was insane at the time of the offense, nor evidence of mental problems

generally is sufficient to make the threshold showing required by *Ake.* Rather, the defendant, at a minimum, must make a factual showing—must present specific evidence—that his sanity at the time of the offense is truly at issue."); *Volanty v. Lynaugh,* 874 F.2d 243 (5th Cir.), *cert. denied,* 493 U.S. 955, 110 S.Ct. 369, 107 L.Ed.2d 355 (1989) (habeas appeal from state court conviction) (bare assertion that defendant was under influence of heroin at time of offense, and was addicted to heroin, was insufficient to establish that sanity at time of offense might be significant issue requiring mental examination); *Hamlet,* 480 F.2d at 557 (request for services of a psychiatrist under § 3006A must be "meritorious"); *Alden,* 767 F.2d at 318–19 ("It is appropriate for the district court to satisfy itself that a defendant may have a plausible defense before granting the defendant's section 3006A(e) motion for psychiatric assistance to aid in that defense").

15. *See supra,* note 14 and accompanying text.

The legal standards for a jury verdict of "not guilty only by reason of insanity" are, of course, different from those governing a court's finding that a defendant is incompetent to stand trial. To succeed with a defense of insanity at the time of the offense, the defendant must persuade the jury by clear and convincing evidence that he was "as a result of a severe mental disease or

Under the Insanity Defense Reform Act of 1984, 18 U.S.C. § 4241,[16] the district court is explicitly authorized to grant a mental examination on the issue of competence to stand trial, upon motion of the defendant or the government, or on the court's own motion, provided there is "reasonable cause to believe that the defendant may be presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." [17] *United States v. McEachern,* 465 F.2d 833 (5th Cir.), *cert. denied,* 409 U.S. 1043, 93 S.Ct. 539, 34 L.Ed.2d 494 (1972).[18]

■ The district court held a hearing on defendant's motion for a mental examination. At that hearing, defendant's counsel reported to the court that defendant had been treated for depression,[19] that defendant was considered aggressive by the jail in which he was confined, and that he sometimes became agitated. R. vol. 3, 6, 7, 14. Defendant's coun-

sel noted that Williams was "helpful with regard to his defense and very rational" at times, although other times he "[became] extremely agitated and it [was] difficult to obtain coherence with regard to what we [were] trying to focus on." R. vol. 3, 13–14. Counsel stated that Williams advised him to file certain motions, including the motion for a mental examination. Most tellingly, the court was presented with evidence that Williams had been handling *pro se* a custody case involving his son in November and December of 1991, the very same period of time in which he was alleged to have kidnapped and sexually assaulted Dana using a firearm, and just weeks prior to the hearing on the motion for a mental examination on his competence to stand trial. In connection with the custody case, Williams had filed numerous coherent briefs with a Louisiana state court, challenging its jurisdiction over him.[20]

After the hearing on Williams' motion for a mental examination, the district court denied

defect ... unable to appreciate the nature and quality or the wrongfulness of his acts." 18 U.S.C. § 17. To find the defendant incompetent to stand trial, the court must find that the defendant is so mentally compromised that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his own defense. 18 U.S.C. § 4241.

**16.** In 1984, The Insanity Defense Reform Act replaced 18 U.S.C. § 4244 with 18 U.S.C. § 4241. Former § 4244 provided for slightly different procedures than § 4241 now does.

**17.** The First, Seventh and Ninth Circuits have held that even if the defendant does not make a motion for a mental examination, if the district court is aware of circumstances amounting to "reasonable cause" to believe the defendant *may be* incompetent to stand trial, the court *must,* on its own motion, provide the defendant with a mental examination by an expert. *United States v. Huguenin,* 950 F.2d 23, 27 (1st Cir.1991) (per curiam) (district court did not err in ordering mental examination of defendant against his will, when defendant demanded that prosecutor and magistrate be arrested and stated his belief that there were no licensed attorneys in the state; bizarre behavior and statements indicated that defendant might be out of touch with reality); *United States v. Teague,* 956 F.2d 1427, 1431–32 (7th Cir.1992) (district court did not err in failing to order mental examination *sua sponte* where defendant had been receiving inpatient treatment for drug dependency and had been diagnosed four months previously with major depression,

generalized anxiety and borderline personality disorder; these disorders "are not psychiatric problems that would prevent a defendant from understanding the proceedings against him and interfere with his ability to confer with his attorney on his own behalf"; moreover, defendant's attorney had indicated to court that he considered defendant competent and defendant was able to respond clearly and properly to court's questions); *United States v. Pederson,* 784 F.2d 1462, 1465 (9th Cir.1986) (district court did not err in ordering mental examination on its own motion, where court's observation of defendant's behavior suggested to court that defendant did not appreciate the gravity of the proceedings).

**18.** When there is no reasonable cause to believe that the defendant may be incompetent, or when the motion for a mental examination is made frivolously or not in good faith, the court does not abuse its discretion in denying the motion. *See, e.g., McEachern,* 465 F.2d at 838.

**19.** Defendant's counsel stated that he had been unable, even after several months of trying, to obtain any records of defendant's treatment by the psychiatrist by whom defendant alleged he was treated.

**20.** These briefs were admitted into evidence at the hearing on the motion for a mental examination. The district court had also received correspondence from the defendant during November and December, 1991. The letters evinced a high degree of rationality.

Williams the opportunity for an examination on the issue of his competence to stand trial because the court found there was no reasonable cause to believe that Williams might be "unable to understand the nature and consequences of the proceeding against him or to assist properly in his defense." R. vol. 3, 41–42. In light of the compelling evidence that the defendant was rational and able to assist his attorney, we cannot say that the district court abused its discretion in denying Williams a mental examination under 18 U.S.C. §§ 4241 or 3006A.

 Under § 4241, to establish reasonable cause to believe the defendant *may be* incompetent to stand trial, there must be grounds for the court to believe that he "*may be* presently so incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense." *McEachern,* 465 F.2d at 837 (emphasis in original; tracking language of 18 U.S.C. § 4241). Thus, establishing a reasonable suspicion of incompetence for trial requires showing reason to suspect major mental disability, as opposed to minor neurosis or slight retardation. For example, a defendant who claims he has sought psychiatric treatment for fear of heights would not necessarily be entitled to a mental examination on the issue of competence to stand trial. If the court is not convinced by the defendant's motion and supporting brief that there is reasonable cause to believe the defendant *may be* incompetent, but the court wishes to hear further evidence, the court may hold a hearing on the matter.[21] *Id.,* 465 F.2d at 837. At the hearing, the government may present evidence tending to contradict the defendant's claim that there is reason to believe he may be incompetent. *Id. See also United States v. Partin,* 552 F.2d at 635–36 (court may take into account defendant's demeanor and the quality of his responses during court proceedings in reaching conclusion that there is no reasonable cause to believe defendant may be incompetent).

In *Lewellyng v. United States,* 320 F.2d 104 (5th Cir.1963), we found that the district court erred in refusing to grant the defendant a mental examination on the issue of competency to stand trial. The defendant's motion for a mental examination had included allegations that he received a brain injury while in the army, behaved uncontrollably during epileptic seizures, had received shock treatment against his will, had tried to kill himself on several occasions, and was currently incoherent and unable to assist his attorney in preparing a defense. These allegations were factually specific, and suggested reason to believe that the defendant might be seriously mentally compromised.

Similarly, in *United States v. McEachern, supra,* after the district court denied the defendant's motion for a mental examination on competence to stand trial, this court remanded for a mental examination, finding that the defendant's motion established reasonable grounds to believe that the defendant *might* be unable to understand the proceedings against him and properly assist in his own defense. Psychiatrists had previously recommended that McEachern be committed to a mental institution, for he had a demonstrated history of psychosis, a mental disturbance involving detachment from reality (often accompanied by auditory and visual hallucinations).

In another instructive case, *United States v. Crosby,* 739 F.2d 1542 (11th Cir.), *cert. denied sub nom. Hirsch v. United States,* 469 U.S. 1076, 105 S.Ct. 576, 83 L.Ed.2d 515 (1984), the Eleventh Circuit remanded for a competency determination in light of uncontradicted evidence that the defendant might be incompetent. The uncontradicted evidence included a neurologist's recommendation that defendant be examined by a psychiatrist because the neurologist doubted defendant's competency, and defense counsel's complaint to the court that "counsel has had a very difficult time communicating with the Defendant, getting very illogical responses and a definite display of loss of memory as to the events surrounding the crime." *Id.* at 1544–45.

By contrast to the detailed allegations of possible incompetency that the defendants

---

**21.** Note that it is within the discretion of the court to decline a hearing on the matter under § 4241, while a hearing is mandated under § 3006A.

provided in *Lewellyng, McEachern* and *Crosby,* Williams supplied only the bare allegation that he has a "history of mental problems," and has been "under medical and psychiatric care as well as medication." Contradicting Williams' allegations of incompetence was evidence that Williams was instrumental in preparing his own defense, while at the same time ably handling *pro se* the custody case involving his son.[22]

Even if true, the bare allegation that he has seen a psychiatrist and taken psychotropic medication, without more, would not suffice to establish reasonable grounds to believe that Williams might be so mentally compromised as to be unable to understand trial proceedings or to assist in his own defense. Williams' counsel did not describe the nature of Williams' alleged psychiatric history, nor did counsel set forth the precise manner in which counsel's interactions with Williams indicated that Williams might be incompetent. Instead, the court was presented with evidence indicating that Williams was attuned to reality and was highly competent.

Thus, Williams' claim is like that of the defendant in *United States v. Teague,* 956 F.2d 1427, 1431–32 (7th Cir.1992), in which the Seventh Circuit found spurious the defendant's claim that the district court had been made aware of circumstances requiring the court to order a mental examination on its own motion. The district court had been presented with evidence that Teague was currently receiving inpatient treatment for drug dependency and had been diagnosed four months previously with major depression, generalized anxiety and borderline personality disorder. In finding that the district court was given no reason to believe that the defendant *might be* incompetent to stand trial, the Seventh Circuit noted that Teague's mental problems "are not psychiatric problems that would prevent a defendant from understanding the proceedings against him and interfere with his ability to confer with his attorney on his own behalf." Moreover, Teague had been able to respond clearly and

properly to the court's questions, and Teague's attorney had indicated to the court that Teague was able to assist in his own defense.

Finally, while we are not prepared to say that the standards for the grant of a mental examination on competence to stand trial are equivalent under sections 3006A and 4241, we find that just as the court did not abuse its discretion in denying defendant a mental examination to determine his competency under § 4241, the court did not abuse its discretion in denying defendant the services of an independent mental health expert under § 3006A. *See Alden,* 767 F.2d at 315; *Hamlet,* 480 F.2d at 557.

### III. THE JURY CHARGE

Defendant contends that the court's instructions to the jury impermissibly broadened the scope of the indictment on counts one through three. This argument has no merit.

As to count one (kidnapping), defendant objects to the court's instruction that the defendant could be convicted of kidnapping for immoral purposes if the jury found that the defendant forcibly and unlawfully held his wife against her will, transported her in interstate commerce while she was so confined, and intended to derive "some benefit" to himself from the kidnapping. The applicable statute, 18 U.S.C. § 1201(a)(1), does not contain the phrase "for an immoral purpose," but instead the phrase "for ransom or reward or otherwise," which this court has determined is equivalent to "ransom, reward, or other benefit." *United States v. De La Rosa,* 911 F.2d 985, 990 (5th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991). The district court noted that the benefit sought to be obtained could be either legal or illegal (in itself), and financial or nonfinancial. The court reminded the jury that the government had the burden of proving beyond a reasonable doubt the benefit (or immoral purpose) defendant sought to obtain (or accomplish). In the indictment

---

**22.** Williams handled the custody case *pro se* beginning in the same month he kidnapped Dana and their son. He continued to be handling the custody case *pro se* when the district court in the instant case held the hearing on Williams' motion for a mental examination, approximately three months after the kidnapping took place.

and at trial, the government alleged that defendant was motivated by a desire to accomplish the "immoral purposes" of assault and rape, and that he intended to commit these acts in front of his two year-old son (perhaps itself an "immoral purpose"). We find that the instruction given by the court on count one was proper. *See De La Rosa,* 911 F.2d at 990; *McBryar,* 553 F.2d at 434 (under 18 U.S.C. § 1201(a)(1), benefit alleged to be sought by kidnapper does not have to be financial; establishing motive of sexual gratification will suffice). We have also reviewed the judge's instructions to the jury on counts two and three and conclude that there was no error in them.

## IV. DENIAL OF ACCESS TO VICTIM'S MEDICAL RECORDS AND GOVERNMENT AGENTS' NOTES

Defendant contends that the government's failure to disclose records of Dana's rape trauma counseling denied him due process, effective assistance of counsel, and a fair trial. He contends that the records would reveal that his wife was mentally deranged at the time of trial, and therefore an incredible witness. The government contends it is unaware of any rape trauma counseling records, but would consider it unnecessary to release such records if they existed. Defendant also contends that the government should have divulged certain documents or notes compiled by FBI agents ("Forms 302"), because they allegedly contain statements by Dana with which defendant might have impeached her testimony at trial. We find no merit to defendant's claim that any of these

documents should have been disclosed to him.

The court issued an order directing the government to permit defendant to inspect and photocopy any potentially exculpatory documentary evidence in the government's possession, and any material that would fall within the scope of Fed.R.Crim.P. 16(a)(2),[23] provided that disclosure would be "in the interests of justice." The order listed documents that the court contemplated would be discoverable, including records of mental and physical examinations of witnesses. If the government's attorney believed that it would not be "in the interests of justice" to disclose any of the materials covered by the order, she was only required to inform the defendant of the "type" of materials being withheld.

 Although the government denies awareness of any rape trauma counseling received by Dana, the government apparently disclosed records of outpatient counseling Dana received prior to the rape. The government also released records of Dana's medical treatment following the rape. Had the government learned that Dana received counseling specifically pertaining to the rape she suffered, we think it beyond cavil that the disclosure of those particular mental health records to the defendant would not have been "in the interests of justice." The defendant already had obtained records of psychiatric care received by the victim. The disclosure of the additional mental health records would in this case have been merely cumulative on the issue of the victim's credibility as a witness. *See, e.g., United States v. Moore,* 786 F.2d 1308, 1314–15 (5th Cir. 1986).[24]

---

**23.** Fed.R.Crim.P. 16(a)(2) provides that the defendant may discover any documents which are material to the defendant's defense and/or which are intended to be used by the government as evidence against the defendant at trial. The rule specifically provides that "internal" memoranda and reports prepared by the government in the preparation of its case are not discoverable. In addition, the rule provides that a "statement" made by a government witness is not discoverable except as provided in 18 U.S.C. § 3500. Under § 3500, a "statement" is (1) a written statement signed by the witness or (2) a "substantially verbatim recital" of an oral statement made by the witness. A "statement" is not discoverable until after the witness has testified on

direct examination at trial, *unless* the statement does not relate to the subject matter to which the witness will testify at trial. If there is a dispute as to whether a statement of a government witness should be disclosed to the defendant, the trial court decides the dispute after reviewing the statement *in camera.*

**24.** The cases cited by the defendant for the proposition that he should have access to Dana's rape counseling records are distinguishable. *See, e.g., United States v. Lindstrom,* 698 F.2d 1154 (11th Cir.1983); *Greene v. Wainwright,* 634 F.2d 272 (5th Cir.1981). None of these cases involved a defendant's request for records of counseling specifically tailored to help the victim of the

Defendant also complains that the government failed to disclose FBI Forms 302, which he alleges contained statements of Dana that he might have used to impeach her testimony. The district court's discovery order did not specifically direct that any FBI Forms 302 be disclosed to the defendant. Under the Jencks Act, 18 U.S.C. § 3500, these FBI Forms 302 are only discoverable if they contain a written, signed statement of a government witness, or a "substantially verbatim recital" of an oral statement made by a government witness. 18 U.S.C. § 3500; *United States v. Mora et al.*, 994 F.2d 1129, 1139 (5th Cir.1993). The district court reviewed the controverted FBI Forms 302 *in camera* and determined that there was no reason to believe the forms contained any verbatim statements by the victim. Our review of the district court's conclusion is limited to whether it was clearly erroneous. *Mora*, 994 F.2d at 1139; *United States v. Roemer*, 703 F.2d 805, 807 (5th Cir.), *cert. denied*, 464 U.S. 935, 104 S.Ct. 341, 78 L.Ed.2d 309 (1983); *United States v. Fragoso*, 978 F.2d 896, 899 (5th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1664, 123 L.Ed.2d 282 (1993).

Although the Forms 302 were based on FBI agents' interviews with Dana, they were not signed by Dana, nor do they contain substantially verbatim statements by Dana relating to the subject matter on which Dana testified, as opposed to "scattered jottings" made by the FBI agents. *See Mora*, 994 F.2d at 1139. We hold that the FBI Forms 302 were not discoverable statements under the Jencks Act.

Even though the FBI Forms 302 are not discoverable under the Jencks Act, they would be discoverable if they would be exculpatory or tend to reduce the defendant's sentence, or if they would help the defendant to impeach a government witness. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[25] After an *in camera* review, the district court concluded that nothing in the Forms 302 would tend to exculpate the defendant, reduce his sentence, or assist him in impeaching a government witness. We find nothing in the record which would cause us to believe that the district court's conclusions were clearly erroneous. *Mora*, 994 F.2d at 1139.

## CONCLUSION

For the foregoing reasons, defendant's conviction is AFFIRMED.

---

crime come to terms with the impact of the crime on her life, where other records of the victim's psychiatric care history were available to the defendant.

**25.** A prosecutor's suppression of evidence which would tend to exculpate the defendant or reduce his sentence violates due process. *Brady v. Maryland*, 373 U.S. 83, 87–88, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215 (1963). The prosecutor must divulge not only exculpatory evidence but also evidence that would tend to impeach witnesses against the defendant. *See Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *United States v. Dula*, 989 F.2d 772, 775 n. 7 (5th Cir.1993). However, the prosecutor's suppression of evidence requires reversal only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). *See also Giglio*, 405 U.S. at 154, 92 S.Ct. at 766.