**UNITED STATES of America**

v.

**Russell Eugene WESTON, Jr., Defendant.**

**No. CR. A. 98–357(EGS).**

United States District Court,
District of Columbia.

Feb. 12, 1999.

Ronald Walutes, Erik Christian, David Goodhand, Assistant United States Attorneys, Washington, DC, for U.S.

A.J. Kramer, Federal Public Defender, L. Barrett Boss, Assistant Federal Public Defender, Washington, DC, for defendant.

### AMENDED MEMORANDUM OPINION & ORDER

SULLIVAN, District Judge.

### INTRODUCTION

The defendant, Russell Eugene Weston, Jr., has been charged in a six-count indictment with the murders of United States Capitol Police Officers Jacob J. Chestnut and John M. Gibson, the attempted murder of United States Capitol Police Officer Douglas B. McMillan, and three counts of carrying and use of a firearm during a crime of violence. The government contends that all of these events occurred on the grounds of the United States Capitol on July 24, 1998, while the victims were engaged in their official duties as federal law enforcement officers. Pending before the Court is the government's motion to compel a videotaped psychiatric examination of the defendant by its expert.

Upon consideration of the motion, opposition and reply thereto, relevant statutory and case law, and the arguments of counsel on January 20, 1999, the Court grants the government's motion to compel a psychiatric examination of the defendant by the government's selected expert. Further, the Court will *sua sponte* commit the defendant, pursuant to 18 U.S.C. § 4247(b), for an inpatient psychiatric examination by hospital personnel at the United States Medical Center for Federal Prisoners at Springfield, Missouri. The psychiatric examination by the government's expert shall occur while the defendant is hospitalized at the Springfield, Missouri facility. At this time the Court will deny without prejudice the government's request that the psychiatric examination be videotaped.

### BACKGROUND

An evidentiary hearing has been scheduled for April 19, 1999 to enable the Court, as the trier of fact, to determine the mental competency of the defendant. On October 15, 1998, pursuant to a joint request by the government and the defendant, this Court appointed Sally C. Johnson, M.D., Associate Warden Health Services, Mental Health Division, Federal Correctional Institution–Butner, to conduct an outpatient psychiatric examination of the defendant that would assist the Court in determining whether the defendant is competent to stand trial. Dr. Johnson spent approximately twenty hours with the defendant. She personally administered psychiatric and personality tests to him, reviewed numerous medical and mental health records, and interviewed family members. Following her examination, Dr. Johnson submitted a report to the Court and defense counsel under seal. Thereafter, defense counsel consented to a release of the report in unredacted form to the government. Dr.

Johnson concluded that the defendant is incompetent to stand trial.

The government has stated that it may challenge Dr. Johnson's opinion. Thus, the government seeks to have its mental health expert examine the defendant so that the expert may offer testimony regarding the issue of the defendant's competence.

## DISCUSSION

### I. Legal Standard

The Due Process Clause of the Fourteenth Amendment[1] prohibits the criminal prosecution of a defendant who is not competent to stand trial. *See Godinez v. Moran,* 509 U.S. 389, 394, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993); *Drope v. Missouri,* 420 U.S. 162, 172, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *United States v. Weissberger,* 951 F.2d 392, 395 (D.C.Cir.1991). "Competency to stand trial at a particular time goes not to the mental condition existing at the time of the alleged offense; it is concerned solely with whether the defendant is then able to confer intelligently with counsel and to competently participate in the trial of his case." *United States v. Collins,* 491 F.2d 1050, 1053 (5th Cir.1974). The standard for determining competency is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam); *see also* 18 U.S.C. § 4241(a) (stating that a defendant is considered incompetent if he is "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense"); *Drope v. Missouri,* 420 U.S. at 171, 95 S.Ct. 896 ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel,

and to assist in preparing his defense may not be subjected to a trial.").

The statute that governs the competency of defendants to stand trial, 18 U.S.C. § 4241 *et seq.,* provides that when there is reasonable cause to do so, the Court shall hold a hearing to determine the mental competency of the defendant. Sections 4241(b) and 4247(b) authorize the court to order one or more mental examinations of the defendant. The psychiatric examination itself is not a hearing and can result in no determination that would bind the accused. *See Stone v. United States,* 358 F.2d 503, 506 (9th Cir.1966). The competency determination must be that of the trial judge. " '[I]t is the duty of the District Court to make a specific judicial determination of competence to stand trial, rather than accept psychiatric advice as determinative on this issue.' " *United States v. David,* 511 F.2d 355, 360 n. 9 (D.C.Cir. 1975) (citations omitted); *see also United States v. Rudisill,* 2 F.Supp.2d 46, 47 (D.D.C. 1998) ("Under 18 U.S.C. § 4241(a), the Court is ... required to hold a hearing to determine the competency of a defendant.").

The hearing authorized by the statute is an adversarial proceeding in which the court must determine the defendant's competency by a preponderance of the evidence. *See United States v. Weissberger,* 951 F.2d at 396. As a result, this hearing must "fully comport with the requirements of Due Process," which means that the defendant has the "right to counsel ..., the right to testify and to present evidence, the opportunity to confront and cross-examine witnesses as well as the right to present witnesses in his own behalf." Insanity Defense Reform Act of 1984 ("Act"), S.Rep. No. 98–225, at 236 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3418. The federal competency statute thus contemplates that this evidentiary hearing will include testimony about the defendant's present competency from both government and defense witnesses. Furthermore, "the limitation or expansion of the scope of testimony and the qualifications of participating witnesses lie squarely within the trial judge's discretion" in competency hearings. *United*

---

1. The Fourteenth Amendment states in pertinent part that "[n]o State shall ... deprive any person

of life, liberty, or property, without due process of law."

*States v. Caldwell*, 543 F.2d 1333, 1348 (D.C.Cir.1974), *cert. denied*, 423 U.S. 1087, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976).

## II. *Motion to Compel Examination by Government Expert*

### A. *Government's Argument*

In support of its motion for a competency examination of the defendant by its chosen mental health expert, the government states that since July 1998, at least seven defense experts have had unrestricted access to the defendant, some or all of whom could testify at the hearing. Accordingly, the government argues that "the only effective rebuttal of [the defendant's] psychiatric opinion testimony is contradictory opinion testimony." *United States v. Byers*, 740 F.2d 1104, 1114 (D.C.Cir.1984) (plurality opinion)(en banc)(quoting *Rollerson v. United States*, 343 F.2d 269, 274 (D.C.Cir.1964)); *see also White v. United States*, 451 A.2d 848, 853 (D.C. 1982) (noting that the "most effective means of controverting" defendant's proof of insanity defense is "rebuttal testimony of other examining psychiatrists").

Therefore, in order to rebut effectively the psychiatric opinion testimony that will be offered by the defendant during the competency hearing, the government contends that its expert should be allowed to examine the defendant in advance of this hearing. *See United States v. Chavis*, 476 F.2d 1137, 1143 (D.C.Cir.1973) ("Particularly with expert witnesses, ample pretrial study by the expert and consultation between lawyer and witness are usually invaluable."). The government claims that if its expert is not allowed to examine the defendant, it will be deprived of any "effective rebuttal" evidence since mere cross-examination of the defendant's experts is inadequate. Moreover, the government

argues that if the defendant does not testify at the competency hearing, the government will be unable "to question the defendant about his understanding of the nature and consequences of the proceedings against him and his ability to assist in his defense." Mem. P. & A. in Supp. of Gov't's Mot. to Compel a Videotaped Psychiatric Examination of Def., at 6; *see also* 18 U.S.C. § 4247(d) (stating that defendant "shall be afforded an *opportunity* to testify") (emphasis added).

### B. *Defendant's Objections*

Although the defendant presents a melange of threshold objections to the government's motion,[2] his opposition can be summarized as follows: First, the defendant argues that the Court has no inherent authority to order a psychiatric examination by a government expert since psychiatric examinations are a prerogative of legislation and the government cannot "show a lengthy history of district court orders for multiple psychiatric examinations at the competency stage." Opp'n to Gov't's Mot. to Compel a Videotaped Psychiatric Examination of Def., at 6. Second, the defendant contends that there is no statutory authority under either 18 U.S.C. § 4241 or Fed.R.Crim.P. 12.2 for the Court to order more than one psychiatric examination. The defendant distinguishes each of the cases relied upon by the government, arguing that none of the cases support the government's position because no court explicitly orders a mental competency examination by a government expert. The defendant concedes, however, that in those cases where a government expert did conduct a competency examination, the defendant did not appear to object to the examination, so the issue was not squarely addressed by those courts.

2. The defendant contends that he is unable to present a complete opposition to the government's motion without knowing who the government expert would be, that the government has failed to specify the scope of the examination it is requesting, and that the government has failed to specify deficiencies in the report that would support its request. The defendant also questions the government's grounds for requesting an examination by its expert in light of the fact that both the government and the defendant moved for a competency evaluation and the Court appointed the expert selected by the government. The defendant finds it significant that Dr. Robert Phillips, a government-retained psychiatrist, was allowed to observe an examination of the defendant by one of the defense doctors, Dr. Seymour Halleck. The defendant appears to contend that the government expert's observations obviate the need for further examination by another government doctor.

Further, the defendant argues that since the Fifth Amendment protection against compelled self-incrimination and the Sixth Amendment right to effective assistance of counsel are implicated at a pretrial competency hearing, see *Estelle v. Smith*, 451 U.S. 454, 468, 470, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), counsel is unable to advise the defendant of the "nature of any compelled exam" without knowing whether the government will seek the death penalty. The defendant is concerned that information gathered from the competency evaluation could be used by the government during the sentencing phase. Accordingly, the defendant urges the Court to "take appropriate steps to ensure that [his] Fifth and Sixth Amendment rights are not violated by such an interview. With regard to the Fifth Amendment, the Court would have to ensure that none of [the defendant's] statements were used either directly or indirectly in proving his guilt or in determining his sentence." Opp'n to Gov't's Mot. to Compel a Videotaped Psychiatric Examination of Def., at 27–28.

### C. Analysis

#### 1. Government Expert

■ This Court possesses the inherent authority to order a defendant to undergo a competency examination by a government expert, especially where, as here, the defendant has proffered that he is incompetent to proceed to trial.[3] Moreover, it can hardly be debated that the Court has discretion in determining, on a case-by-case basis, what information it will need to make a competency determination.[4] Contrary to the defendant's claim, the case law *does* indicate that courts have ordered multiple examinations at the competency stage. Indeed, it is the exception, rather than the norm, for the court to have only one expert present testimony regarding the defendant's competency.[5]

3. See, e.g., *United States v. Webster*, 162 F.3d 308 (5th Cir.1998) (holding that although a psychiatric examination by a government expert is not expressly provided for in the Federal Death Penalty Act, "a district court possesses inherent powers 'reasonably useful to achieve justice' ... [and the] court had the inherent authority to order the exam"); *United States v. Davis*, 93 F.3d 1286, 1295 (6th Cir.1996) (holding that the psychiatric examinations provided for in Fed.R.Crim.P. 12.2 and 18 U.S.C. § 4241 "do not displace extant inherent authority to order a reasonable, noncustodial examination of a defendant"); *United States v. Phelps*, 955 F.2d 1258, 1265 (9th Cir. 1992) ("We have held that where express authority is lacking, the district court may rely upon its inherent power to order a psychiatric examination."); *United States v. Bohle*, 445 F.2d 54, 66 (7th Cir.1971)(holding that "federal courts have the inherent power to order a defendant to submit to and cooperate with examination by a Government psychiatrist where the defendant's insanity has been made an issue in the case"), *overruled on other grounds*, *United States v. Lawson*, 653 F.2d 299 (7th Cir.1981).

4. The statute under which the court appoints its expert, 18 U.S.C. § 4241(b), provides that "the court *may* order that a psychiatric or psychological examination of the defendant be conducted ... pursuant to the provisions of section 4747(b) and (c)." (emphasis added). The use of the word "may" coupled with the due process requirements of the hearing, *see* 18 U.S.C. § 4247(d), persuasively suggests to the Court that competency hearings could be a battle of the experts, and that faced with this situation, the Court can order additional examinations to evaluate the defendant's competency.

5. See, e.g., *United States v. Hamilton*, 107 F.3d 499, 502 (7th Cir.1997) (emphasizing that at the defendant's competency hearing, expert testimony was presented by two expert witnesses-a clinical psychologist from Springfield, where defendant was committed, and a psychiatrist who had treated defendant on a prior occasion), *cert. denied*, —— U.S. ——, 117 S.Ct. 2528, 138 L.Ed.2d 1028 (1997); *United States v. Byers*, 740 F.2d 1104, 1106–1107 (D.C.Cir.1984) (plurality opinion) (en banc) (noting that defendant underwent the first competency examination at the request of defense counsel and the second upon the government's motion after "an unfocused defense objection"); *United States v. Caldwell*, 543 F.2d 1333, 1350 (D.C.Cir.1974) ("The court enlisted the aid of various experts to make a pretrial determination of Caldwell's competence to stand trial."); *United States v. Pogany*, 465 F.2d 72, 76, 77–79 (3rd Cir.1972) (remanding to trial court where the trial court had not appointed a psychiatrist but made a competency determination based upon testimony by defendant's treating psychiatrists and government expert); *United States v. Gigante*, No. CR 90–446, 1996 WL 497050, at *1 (E.D.N.Y. Aug.28, 1996) (noting that the judge formerly assigned to the case appointed two psychiatrists to conduct psychiatric examinations and give reports and that the defendant was later examined by two psychiatrists selected by his attorneys); *United States v. Tesfa*, 404 F.Supp. 1259, 1261–64 (E.D.Pa.1975) (holding a total of five hearings to determine defendant's competency to stand trial where testimony was taken from at least four court-appointed experts and one "government consultant"); *cf. United States v. Kokoski*, 865 F.Supp. 325, 326 (S.D.W.Va.1994) (finding defendant incompetent

Relying upon *Carlisle v. United States,* 517 U.S. 416, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996), the defendant argues that the Court does not have the inherent authority to grant the government's motion because 18 U.S.C. § 4241 *et seq.* and Fed. R.Crim. P 12.2(c) empower the court to order "a" single psychological examination, but not more than one. In *Carlisle,* the Court rejected the petitioner's claim that the district court had "inherent supervisory power" to grant an untimely postverdict motion for judgment of acquittal because "[w]hatever the scope of this 'inherent power,' it does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure." *Id.* at 426, 116 S.Ct. 1460.

■ Here, the Court's inherent authority conflicts with neither the Act nor the Federal Rules of Criminal Procedure. Contrary to the defendant's assertion, there are no statutory restrictions to the number of examinations the Court may order.[6] Therefore, even if the Act arguably does not authorize the Court to compel an examination by a government expert, the Court is not persuaded by the defendant's argument that the statute prohibits the Court from appointing more than one expert, whether neutral or government-selected. Furthermore, Fed.R.Crim.P. 12.2(c) merely authorizes the Court to order a § 4241(b) evaluation on the government's motion.[7] Since the Court is not persuaded by the defendant's interpretation of the Act, the Court finds the defendant's reliance upon *Carlisle* to be misplaced. In view of the foregoing and the following additional reasons, the Court concludes that the government's motion should be granted.

First, the Court appointed Dr. Johnson to examine the defendant pursuant to a joint motion by the defendant and the govern-

ment. The defendant therefore raised the issue of his mental competency to stand trial, so his attempt to distance himself from this reality is disingenuous.

Next, the defendant stated during oral argument that his sole expert witness for his case-in-chief at the competency hearing will be Dr. Johnson. If the Court did not grant the government's motion, the competency hearing would be limited to one expert opinion in an area where the case law shows that experts often disagree, *see United States v. Byers,* 740 F.2d at 1114, and the government would be limited to cross-examining Dr. Johnson and possibly offering lay witnesses. In other words, the government would not be able to present *any* expert opinion on the issue of the defendant's competency.

As a result, even though the defendant has the burden of proof, *see Cooper v. Oklahoma,* 517 U.S. 348, 362, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996), he has failed to show how the hearing can fulfill its adversarial purposes if the government is prevented from presenting expert opinion testimony. *See United States v. Weissberger,* 951 F.2d 392, 396 (D.C.Cir.1991). Indeed, as this Circuit has stated, "[o]rdinarily the only effective rebuttal psychiatric opinion testimony is contradictory opinion testimony; and for that purpose . . . '[t]he basic tool of psychiatric study remains the personal interview.' " *United States v. Byers,* 740 F.2d at 1114 (citations omitted).

Another compelling reason exists for granting the government's request to examine the defendant. During the hearing on January 20, 1999, the government stated that it was dissatisfied with Dr. Johnson's report because, *inter alia,* she failed to discuss that the defendant filed over half a dozen civil

based upon a single report from Butner without objection by either party).

**6.** 18 U.S.C. § 4241(b) provides that "the court *may* order that a psychiatric or psychological examination of the defendant be conducted . . . pursuant to the provisions of section 4247(b) and (c)." (emphasis added). Section 4247(b) provides that "[a] psychiatric or psychological examination ordered pursuant to this chapter shall be conducted by a licensed or certified psychiatrist or psychologist, *or, if the court finds it appropri-*

*ate, by more than one such examiner.*" (emphasis added).

**7.** Rule 12.2(c) provides that "[i]n an appropriate case the court may, upon motion of the attorney for the government, order the defendant to submit to an examination pursuant to 18 U.S.C. 4241 or 4242." The Advisory Committee Notes to Rule 12.2(c) indicate that this statutory scheme is *not* comprehensive—rather, Congress has explicitly left it to the courts to determine what is "an appropriate case."

lawsuits in Montana and Illinois between 1984 and 1986. It is unclear whether the government contends that the defendant represented himself or that he was represented by an attorney. Although these lawsuits appear to have occurred over ten years ago, the government's concern is hardly frivolous. *See United States v. Williams*, 998 F.2d 258 (5th Cir.1993).[8]

Finally, the defendant's Fifth Amendment objections can be addressed quickly. The scope of the competency hearing shall be limited to determining whether the defendant is "suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceeding against him or to assist properly in his defense." 18 U.S.C. § 4241(b). If any information is obtained beyond this limited scope that would be relevant to the defendant's guilt and/or a future death penalty phase, that information would be excluded under both *Estelle v. Smith*, 451 U.S. 454, 469, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), and Fed. R.Crim.P. 12.2(c), (d).

Although the Court will grant the government's motion to compel a psychiatric examination of the defendant by its expert, the Court is concerned about the efficacy of ordering another outpatient examination by a mental health expert. Accordingly, for the reasons set forth *infra* Part II.C.2., the Court Orders that the government expert's mental health examination of the defendant shall be conducted while defendant is both hospitalized and undergoing a court-ordered psychiatric examination at the federal hospital.

### 2. *Inpatient Examination*

■ In addition to granting the government's motion, the Court also Orders the defendant committed for an inpatient psychiatric examination by hospital personnel at the Springfield, Missouri facility pursuant to 18 U.S.C. § 4247(b). Given the tendency of psychiatric experts to disagree, *see United States v. Brandon*, 158 F.3d 947, 955 (6th Cir.1998) the Court deems it prudent to have more than one *court-appointed* expert examine the defendant.[9]

The initial examination conducted by Dr. Johnson was performed on an outpatient basis because the defendant's serious physical injuries precluded him from being moved to the federal hospital at Butner, North Carolina. While the Court is not obligated to commit the defendant for an inpatient evaluation, the Court may, in its discretion do so.[10] *See* 18 U.S.C. § 4247(b). Such an inpatient commitment will undoubtedly facilitate the government expert's examination of the defendant as well. Since it appears that there are no medical restrictions on moving the defendant at this time, the Court will Order the defendant committed for an inpatient evaluation for the following reasons.

The value of an inpatient evaluation over another outpatient evaluation is that trained staff, including psychiatrists, psychologists,

---

8. In *Williams*, the issue before the court was whether the trial court had erred in denying the defendant's motion for a competency determination. *See id.* at 260. The trial court was presented with evidence that the defendant had been treated for depression, that his jail guards thought he was aggressive, and that he was sometimes incoherent while communicating with his attorney. *See id.* at 265. "Most tellingly, the court was presented with evidence that Williams had been handling pro se a custody case involving his son" during the same time that he was alleged to have committed the crime and "just weeks prior to the hearing on the motion for a mental examination on his competence." *Id.*

9. In addition to the government's concerns, defense counsel represented that their sole expert witness in their case-in-chief will be Dr. Johnson, the first court-appointed expert. *See United*

States v. Klat, 156 F.3d 1258, 1264 (D.C.Cir. 1998) (remanding to the trial court for a determination of whether the results of a competency hearing would have been different if appellant had been represented by counsel and directing the trial court to consider whether the defense's retention of a second forensic specialist would have changed the outcome); *United States v. Chavis*, 476 F.2d 1137, 1139 (D.C.Cir.1973)(noting that defendant moved for a second examination in order to verify the finding of competence by the court-appointed examiners).

10. The legislative history of the Act states that "[i]f, however, the court believes that the defendant's examination can be conducted on an outpatient basis, there need not be a commitment under this provision." S.Rep. No. 98–225, 98th Cong., 2d Sess. at 235, *reprinted in* 1984 U.S.C.C.A.N. at 3417.

nurses, ward staff and correctional officers, will observe the defendant over thirty days.[11] Such an evaluation could, therefore, provide the Court with a more complete picture of the defendant's mental competency. *See United States v. Tesfa,* 404 F.Supp. 1259, 1268 (E.D.Pa.1975)(giving "considerable weight" to the psychiatrist who "had spent the most time with [defendant] and acquired the greatest familiarity with, and insight into, his condition. That a witness' intimate familiarity with one claiming to be incompetent entitled his testimony to be accorded the greatest weight is beyond question."); *see also United States v. Caldwell,* 543 F.2d at 1349 (noting that the trial judge made her second competency determination after "hear[ing] testimony, subjected to cross-examination, from the jail guard who discovered the [suicide] attempt, and from the doctor and nurse who treated [the defendant]").

One final compelling reason exists for the Court's determination that additional experts, court-appointed and government-designated, should examine the defendant in a hospital setting. Assuming *arguendo* that the Court ultimately finds Dr. Johnson's report persuasive, the Court could follow Dr. Johnson's advice and commit the defendant for treatment under 18 U.S.C. § 4241(d), which could include the administration of psychotrophic medication. As the side effects of such drugs are well-documented and potentially catastrophic, the Court would be ill-advised to make this decision without more than one expert opinion. *See United States v. Brandon,* 158 F.3d at 953 (noting that a person "has a First Amendment interest in avoiding forced medication [because] it may interfere with his ability to communicate ideas")(citing *Bee v. Greaves,* 744 F.2d 1387, 1393 (10th Cir.1984)("Antipsychotic drugs have the capacity to severely and even permanently affect an individual's ability to think and communicate.")); *In re Ollie Bryant,* 542 A.2d 1216, 1218 (D.C.1988).

This Court is mindful of its obligation to give an account of its reasoning prior to committing a person for a psychiatric examination. *See United States v. Deters,* 143 F.3d 577, 584 (10th Cir.1998)(upholding the trial court's decision to take the defendant into custody and commit her for an inpatient competency examination because "the district court articulated sound reasons for ordering commitment"); *cf. In re Newchurch,* 807 F.2d 404, 410, 412 (5th Cir.1986)(vacating the trial judge's commitment order "[i]n the absence of some evidence that commitment [to determine sanity at the time of the offense] is necessary" and ordering the trial judge to conduct an evidentiary hearing to decide whether the determination should be made on an inpatient or outpatient basis); *Marcey v. Harris,* 400 F.2d 772, 774 (D.C.Cir.1968)(remanding to the trial court for a determination based upon a report of the hospital authorities of whether inpatient commitment for mental competency and sanity at the time of the offense was necessary to assure an effective examination where the defendant had been released on bond). Since the defendant is currently detained without bond, however, an inpatient examination would hardly put any additional restrictions on his liberty.

### III. *The Government's Request for a Video-taped Examination*

The government argues that because the defendant's attorneys obtained a court order within days of the shootings that allowed them to videotape the defendant in his hospital room during their interviews and examinations, a videotaped examination of the defendant by its expert will facilitate the Court's determination of the defendant's competency. The government also contends that a videotaped examination will "aid the court in its dual responsibility of assessing both the quality of the examination and the ultimate question of competency." Mem. P. & A. in Supp. of Gov't's Mot. to Compel a Videotaped Psychiatric Examination of Def., at 7.

Not surprisingly, the defendant objects to the government's motion by stating that Congress intended to allow videotaping only in very limited circumstances. Specifically, the

---

11. Furthermore, staff at these institutions are familiar with the *Dusky* standard of mental competence. *See Featherston v. Mitchell,* 418 F.2d 582, 586 (5th Cir.1969).

defendant directs the Court's attention to 18 U.S.C. § 4247(f), which provides that:

> Upon written request of defense counsel, the court may order a videotape record made of the defendant's testimony or interview upon which the periodic report is based pursuant to subsection (e). Such videotape record shall be submitted to the court along with the periodic report.

In interpreting the statute, the defendant argues that only he may request a videotaped examination, and he maintains that the videotaped examination has to be of an insanity acquitee and in connection with the periodic report required under § 4247(e). Therefore, the defendant concludes that it is apparent Congress considered the issue of videotaping a defendant but decided to limit strictly the circumstances under which videotaping is authorized.

█ With regard to this issue, the Court will deny the motion at this juncture because the Court has neither received nor requested input from the Bureau of Prisons regarding the efficacy or necessity of videotaping the defendant's examination. Moreover, the government has not proffered that its psychiatric expert has a compelling need for such an examination. Upon requests made by the Bureau of Prisons and/or the government's expert, the Court, however, will reconsider its order denying a videotaped examination.

### CONCLUSION

As the Court has stated on more than one occasion and as the parties have recognized, this is an atypical case. What is clearly not atypical, however, is that courts are usually presented with the testimony of more than one expert at competency hearings.

If the defendant proceeds to trial and is convicted of murdering federal police officers engaged in their official duties, the government could request the death penalty. Thus, the Court will be especially cautious in assessing, analyzing, and resolving every issue presented.

The Court has carefully considered the motion, opposition, and reply thereto, arguments of counsel on January 20, 1999, and the relevant case law and statutory authority.

Recognizing that it will have to make difficult legal decisions after hearing all of the evidence at the competency hearing, the Court is of the opinion that it will benefit greatly if it has the opportunity to hear from more than one expert on the issue of the defendant's competency to stand trial. This benefit is significant given that psychiatry is a profession where experts often disagree.

Moreover, if the examination of the defendant by the government's expert is conducted while the defendant is undergoing an inpatient court-ordered examination at a federal facility, the benefit to the Court is that trained staff, including psychiatrists, psychologists, nurses, ward staff, and correctional officers, will observe the defendant over a thirty-day period. Thus, the Court would be provided with a more complete picture of the defendant's mental competency or lack thereof than the Court might otherwise have based upon a twenty-hour outpatient examination by a single expert.

Accordingly, pursuant to 18 U.S.C. § 4247(b), the Court will forthwith commit the defendant for a thirty-day inpatient examination at the United States Medical Center for Federal Prisoners at Springfield, Missouri. The scope of the examination will be limited to a determination of the defendant's competency to stand trial on the charges in the indictment. The Court will also grant the government's motion for a psychiatric examination by its designated expert. This examination shall occur while the defendant is hospitalized at the Springfield, Missouri facility.

With regard to the issue of videotaping the examination by the government expert, the Court will deny the motion at this time. The Court has neither received nor requested input from the Bureau of Prisons regarding the efficacy or necessity of videotaping the defendant's examination. Moreover, the government has not proffered that its psychiatric expert has a compelling need for the examination to be videotaped. Therefore, upon requests made by the Bureau of Prisons and/or the government's expert, the Court will reconsider its order denying a videotaped examination.

Accordingly, in view of the foregoing, it is hereby

ORDERED that the government's motion to compel a psychiatric examination of the defendant by the government's expert is GRANTED; and it is

FURTHER ORDERED that the defendant is committed FORTHWITH to the custody of the Attorney General of the United States, pursuant to 18 U.S.C. § 4247(b), for a period not to exceed 30 days for placement at the United States Medical Center for Federal Prisoners at Springfield, Missouri [12] for a mental examination. Upon completion of the evaluation, the defendant shall be returned to his present place of incarceration; and it is

FURTHER ORDERED that the government shall designate the expert of its choice to conduct a psychiatric examination of the defendant and submit the resulting report to the Court and defense counsel; and it is

FURTHER ORDERED that reports of both examinations shall discuss the subject areas outlined in 18 U.S.C. § 4247(c)(1), (c)(4)(A). The reports issued pursuant to this Order shall be filed UNDER SEAL with the Clerk of the Court, with copies to chambers, the Assistant United States Attorney, and defense counsel; and it is

FURTHER ORDERED that the Assistant United States Attorney and defense counsel shall forward FORTHWITH to the facility at Springfield, with copies to the Court, all mental health reports and other documents that should be considered by the examiners; and it is

FURTHER ORDERED that the facility at Springfield is to cooperate fully with the expert chosen by the Government; and it is

FURTHER ORDERED that the competency hearing previously scheduled for February 22, 1999, is rescheduled to April 19, 1999, at 10:00 a.m.; and it is

FURTHER ORDERED that a Status Hearing is scheduled for March 15, 1999, at 10:00 a.m.; and it is

FURTHER ORDERED that a Pretrial Hearing is scheduled for March 25, 1999, at 10:00 a.m.

IT IS SO ORDERED.

12. The Court recommends hospitalization at the Springfield facility in view of the fact that Dr. Johnson is the Deputy Warden at the Butner, North Carolina facility.